[Criminal No. 916.   Filed December 7, 1942.]

[131 Pac. (2d)  814]

STATE OF ARIZONA, Appellee, v. DONALD
PETERS and HERB BECHTEL, Appellants.

Mr. Joe Conway, Attorney General, Mr. W. E. Polley, Assistant Attorney General, Mr. Richard Harless, County Attorney, and Mr. Darrel Parker, Deputy County Attorney, for Appellee.

Mr. L. J. Cox and Mr. Geo. T. Wilson, for Appellants.

LOCKWOOD, C. J.—On May 24, 1941, Donald Peters and Herb Bechtel, defendants, together with one Clarence Hammons, were jointly informed against by the county attorney of Maricopa County for the crime of burglary. No demand was made for a severance, but when the case was called for trial, Hammons withdrew his plea of not guilty theretofore entered, and pleaded guilty, and the matter went to trial before a jury as against defendants alone. They were found guilty as charged by the jury and were sentenced, respectively, to serve terms in the state prison. After the usual motion for new trial was made and overruled, this appeal was taken.

There are two assignments of error. The first is that the court erred in denying the motion for new trial made on the ground there was newly discovered evidence which was not available to defendants at the trial, and which was such as to render a different verdict reasonably probable upon a new trial, and the additional ground that the confession and testimony of Hammons was not supported by any credible evidence.

The second assignment is that the court erred in not permitting counsel for defendants to cross examine Hammons in regard to certain matters.

The first question is as to the newly discovered evidence. The situation presented by the record on this

point is decidedly unusual. The motion for new trial set up, among others, the following ground:

"12. That new and material evidence, which if introduced at the trial would probably have changed the verdict has been discovered which the defendants could not with reasonable diligence have discovered and produced upon the trial, and which defendants desired to introduce and supplement by affidavits to be hereafter filed."

In support of No. 12 three affidavits were filed. The first was by one Robert Galloway going to alleged misconduct of the jury. This we need not consider for the reason that the particular misconduct shown by the affidavit was not assigned as one of the grounds of the motion for new trial.

The other two affidavits by Wayne Custer and Marie Cook are as to impeaching statements made before her testimony under oath by Dorris Hammons, one of the witnesses used by the state in rebuttal. Testimony of this nature usually does not justify a new trial. *Indian Fred* v. *State,* 36 Ariz. 48, 282 Pac. 930.

There were also two unverified statements. One was by Joe Hammons, one of the witnesses at the trial, in which he stated that certain of the testimony which he gave at the trial was untrue, and, in substance, that he had been induced to give his testimony as a result of certain threats and promises made to him by a deputy sheriff. There was also a statement by one of defendants' counsel, in which he said he had been shown a confession made by Hammons to another burglary, in which confession he was asked if he had any statement to make in regard to other robberies, and he replied he had none. This statement further said the attorney had been informed by one of the officials of Pinal County that Hammons had made oral confessions to many burglaries, but the details he gave did not fit in with some of the actual facts of the burglaries, and that Hammons had afterwards repudiated this oral state-

ment. In none of these statements did Hammons refer to the burglary charged in the present case.

There was also a statement by a fingerprint expert that, in his opinion, the fingerprints which played a large part in the trial were not those of Bechtel, one of the defendants.

None of these statements were under oath, nor was there an affidavit that any witness would, at a new trial, testify to the facts contained in the statements. Such statements, under the old statute, section 5097, Revised Code 1928, were not sufficient to justify a new trial. *Rosser v. State,* 45 Ariz. 264, 42 Pac. (2d) 613. And while section 44–2004, Arizona Code 1939, which was in effect when the motion for new trial was made, does not expressly require supporting affidavits, yet we think the showing made was of such a nature that we cannot say the court was not justified in denying the motion made on the ground of newly discovered evidence.

The notice of appeal was given on July 2, 1941, and the record transmitted to and filed in this court on October 18 of the same year. On February 11, 1942, an amended motion for new trial on the ground of newly discovered evidence was filed in the superior court. Supporting it was an unverified statement by Hammons to the effect that he was not with defendants the night of the burglary with which they were charged; an affidavit by Hammons made a few days after the statement to the effect that he was with them at the commission of the burglary; an affidavit by one Truman Carr, who testified for defendants, to the effect that Hammons could not have been present at the time of the burglary because he was with the affiant that night on another robbery at a different place, in which affidavit the witness repudiated his testimony that Hammons was with him the night of the Tempe burglary, and an affidavit by Joe Hammons in which he repudiated the statement

he made in support of the original motion for new trial, and said that his testimony given at the trial was true.

■ When the supplemental motion for new trial was filed in the superior court on February 11, the appeal had already been perfected and the superior court had lost jurisdiction of the case for all purposes except such as were in furtherance of the appeal. *Gotthelf* v. *Fickett*, 37 Ariz. 322, 413, 294 Pac. 837. We think a new motion for new trial asking the court to make an order which, if valid, would have taken the appeal out of the jurisdiction of this court and remanded it to the superior court, could hardly be considered in furtherance of the appeal, and the trial court very properly refused to consider it. However, the motion and affidavits supporting it were sent up by the clerk for such action as we might think proper.

■ It is a fundamental rule governing criminal appeals that we can consider only the record on the case as it was presented to the trial court, for obviously it would be unfair to that court to reverse its action on account of matters which it did not have properly submitted to it for consideration. *Sam* v. *State*, 33 Ariz. 383, 265 Pac. 609. We, therefore, cannot consider the additional motion and affidavits. However, we may say in passing that they are of such a contradictory nature that we think no court would be justified in considering them a ground for a new trial. There was certainly no error on the part of the trial court in denying the motion for new trial on the ground of newly discovered evidence.

We consider next whether the evidence is sufficient to sustain the verdict. The testimony of Hammons was explicit to the effect that he, in company with both of the defendants, committed the burglary charged. But Hammons was an accomplice, and the testimony of an accomplice is not sufficient to sustain a conviction unless it is corroborated by other evidence which, in it-

self and without the aid of the testimony of an accomplice, tends to connect the defendant with the commission of the offense. Section 44–1819, Arizona Code 1939. Is there such corroborating testimony?

A window in the place burglarized was broken during the night in which the burglary was committed, and certain fingerprints were found on one of the broken pieces. Two witnesses qualified as experts on fingerprints, and testified that, in their opinion, the fingerprints on the glass were those of defendant Bechtel. They were cross examined at some length, and gave the reason for their opinion. One witness qualified as a fingerprint expert and testified that the prints on the glass were so blurred that, in his opinion, no witness would be justified in stating whether they were or were not the fingerprints of any particular individual, and further that he found on the glass one dissimilarity from that of the admitted fingerprint of defendant Bechtel. One Jack Koarne testified that about one o'clock in the morning of the night of the burglary he saw an automobile parked in an alley about a block from the station, which he identified as being a car which was proved later to belong to defendant Peters. He was cross examined and admitted that when he first reported the finding of the car to the police shortly after the burglary, he told the officers it was a Chevrolet pickup, when in reality the one owned by Peters, and which the witness identified at the trial as the one he found parked, was a Ford coupe.

█ █ If the expert witnesses for the state were correct in their opinion that the fingerprints of the defendant Bechtel were found on the broken window the morning after the burglary, that was certainly evidence sufficient within the provisions of section 44–1819, *supra*, to connect Bechtel with the commission of the crime. If the testimony of the witness Koarne that he saw a car parked in an alley within a block of the

depot at one o'clock in the morning the night of the commission of the burglary, and it was one which was afterwards shown to be the property of defendant Peters, be accepted as true that certainly would be sufficient evidence as against Peters to bring the case within the section just above mentioned. Of course the testimony of the expert witnesses for the state was contradicted by testimony of the expert witness for the defendant, and the testimony of the witness Koarne as to the identity of the car was impeached by his statements to the officers, made after the burglary, that the car he saw in the alley was a Chevrolet pickup. However, it was a matter for the jury as to which evidence on those two points it would believe. The court instructed the jury that it could not convict upon the testimony of Hammons alone, and that there must be corroborating evidence of the type required by the statute. From the verdict the jury evidently accepted the testimony of the corroborating witnesses for the state, and we cannot say that it was not sufficient as a matter of law, when considered with that of Hammons, to sustain the verdict.

The last assignment of error goes to the refusal to permit counsel for defendants to cross examine Hammons as to his confession to burglaries other than the one involved in the present case. It was contended by defendants' attorney that under the rule laid down by this court in *Cochrane* v. *State,* 48 Ariz. 124, 59 Pac. (2d) 658, a witness could be examined as to other crimes which he had committed in order to test his credibility. The court recognized the rule of the Cochrane case but held, and correctly, that it applied only to crimes of which a witness had been convicted or to which he had formally pleaded guilty, and not to those of which he had been only accused or to which he had confessed. Counsel for defendants then made an offer of proof and

the matter was presented to the trial court in the following manner:

"Mr. Wilson: I would like to make an offer, if the court pleases. There are two things. I propose to show by this witness or to interrogate him upon other crimes that he together with Truman Carr committed prior to the commission of the one in question here, crimes of a similar nature, burglary and so forth, and I propose to show further that he has given confessions to many crimes that he never did commit.

"The Court: Do you propose to show his conviction on these crimes that you are going to ask him about?

"Mr. Wilson: Not on those crimes, I simply want to show that he was engaged with Truman Carr in a series of crimes just prior to the commission of this crime concerning which he has testified.

"The Court: You don't propose to show any conviction or plea of guilty on any of them?

"Mr. Wilson: No, I don't know that any plea of guilty has been entered by this witness.

"The Court: If there is any question about the authorities, I will look it up.

"Mr. Wilson: I have none right here available, I will confess that.

"The Court: I don't want to make a mistake. I will deny that. If you have any authority, I will be glad to look at it, and if I am wrong I will change it."

It may be that in order to impeach the credibility of the witness as to the confession of a crime, it is permissible under proper circumstances to show that he has a habit of confessing crimes which it is proved later he never could have committed, but the colloquy above set forth shows that this phase of the matter was never properly presented to the court, although there was language in the offer which, if made more explicit, might have required a consideration of that issue. It is clear, however, that the thing discussed at the time was not an offer to prove a habit of false confessions as tending to show that the one made in

the instant case was false, but an offer to show that Hammons had been engaged in the commission of other crimes of which he had not been convicted, and that he was, therefore, generally unworthy of belief. Under all the circumstances, we. think the offer of proof was not sufficiently explicit to apprize the court of the particular evidence which might have been admissible and the theory upon which it was offered, and the court cannot properly be charged with error in this respect.

It was urged strenuously in the oral argument in this court that there has been a serious miscarriage of justice and that two innocent men have been convicted of a crime which they did not commit. If at any time they can show the board of pardons and paroles that they are innocent, that board has ample power to correct the injustice, if there was one, but under· the rules of law applicable to the situation, we cannot reverse the conviction.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.