463 P.2d 106

STATE of Arizona, Appellee,

v.

Franklin B. STREETT, Appellant.

Nos. 2 CA–CR 185, 2 CA–CR 186, 2 CA–CR 191.

Court of Appeals of Arizona.

Division 2.

Dec. 30, 1969.

**212**

Gary K. Nelson, Atty. Gen., Phoenix, by Carl Waag, Asst. Atty. Gen., for appellee.

Rees, Estes & Browning, by H. W. Howard, Tucson, for appellant.

KRUCKER, Chief Judge.

Because of the identity of questions presented in these three appeals, this court, upon the defendant's motion, ordered consolidation for all purposes. In fact, Nos. 2 CA–CR 185 and 186 were consolidated for trial below, resulting in convictions for both offenses charged: (1) obtaining money by false pretenses or confidence game, and (2) theft by embezzlement. In a separate trial, defendant was found guilty of the crime of forgery. All three charges arose out of the defendant's conduct while employed as an automobile salesman for Pueblo Ford, a Tucson, Arizona car dealer.

The defendant was represented by court-appointed counsel at all stages of the respective proceedings below. On appeal, however, he is represented by another appointed counsel who has examined the record in all the cases and has concluded that the appeals therefrom are wholly frivolous. He has filed a motion for permission to withdraw as counsel and in compliance with Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), filed a brief enumerating those points which "might arguably support an appeal." The defendant was furnished a copy of counsel's brief and its accompanying affidavit and was informed therefrom of counsel's belief that the appeals were frivolous. Counsel also forwarded to him the entire available record. Thus, the procedure followed by appellate counsel comports with that approved by the Arizona Supreme Court in State v. Leon, 104 Ariz. 297, 451 P.2d 878 (1969) and his motion to withdraw is granted.

We afforded the defendant an opportunity to file a brief in his own behalf. He has done so, in substance reiterating the "arguable errors" and in addition, he attacks the fairness of his trial and the adequacy of his representation by counsel.

Briefly, the evidence in support of the respective convictions is as follows. As to the embezzlement charge, it arose out of a transaction between the defendant and a couple with whom he dealt in the course of his employment. This couple, after discussion with the defendant, signed an agreement to purchase a new vehicle. They gave him a check as down payment and left the payee's name blank at the defendant's suggestion. He told them that Pueblo Ford's name would be inserted by the cashier. Subsequently, however, the defendant's name was written in as payee without the authorization of the makers. Later the same day on which the sales agreement was signed and the check issued, the purchasers returned to Pueblo Ford for purposes of rescinding the transaction and procuring their check. They were unable to contact the defendant as he had left

for the day and were informed that no papers of any kind concerning their transaction were in the office. Two days later, the defendant contacted the couple by phone and they agreed to purchase the same type of car, with a smaller engine. The check which the couple had given to the defendant as a deposit was cashed by him instead of being paid to Pueblo Ford.

As to the obtaining money by false pretenses or confidence game charge, this too arose out of purchase negotiations with a customer. The defendant was given a down payment check made out to Pueblo Ford by the customer. The following day, he advised the customer that the check had been accidentally torn and he had deposited his own money with Pueblo Ford. He asked the customer to give him a new check payable to him. The customer complied with this request but in fact, at that point in time the defendant had made no deposit of his own funds on behalf of the customer. It was contrary to company regulations for deposit checks to be made out to salesmen or for salesmen to retain any deposit money.

As indicated above, the forgery charge was tried separately. It arose out of the defendant's negotiations with another couple for their purchase of a new car. The couple signed a written purchase agreement and gave defendant a deposit check made out to Pueblo Ford. The next day defendant telephoned the wife, informing her that the check was torn and that the bank would not accept it in a mutilated condition. He asked if he could make out a new check, but she told him that he could not. The State introduced into evidence a counter check, dated the day following this telephone conversation, made payable to the defendant. This check bore the purported signature of the customer-husband (it was not in fact his signature) and the check was cashed by the defendant. When the couple received their monthly bank statement, which included the cancelled check, payment was stopped on the torn check. The customer-husband testified to a conversation with the defendant:

\* \* \* \* \* \*

"Q And was there any conversation regarding the check that you had made payable to him?

A Yes, there was.

Q And what was that?

A I told him that I wanted that check and that I would write him out another check for the amount, inasmuch as he would give me the cancelled check, and at that time he—we were talking there and then he said he wanted the check made out to his name, and I told him that I was dealing with Pueblo Ford and that I wasn't going to write the check out to his name, and he then told me that the reason he wanted it made out to his name was due to the fact that he had put his name on the check here, and the bank had refused to cash it, and therefore, he tore it up."

It was not until the day after this conversation that the defendant deposited to the customer's account with Pueblo Ford a cash sum equivalent to the customer's deposit check.

In all three cases defendant challenges the trial court's refusal to grant his pretrial motion for an order directing Pueblo Ford "to furnish counsel for defendant with the names and addresses of each and every person who has purchased a vehicle from Pueblo Ford Inc. during the month of July through December, 1968." The motion further recited:

"The defense in this case will be based on the lack of criminal intent by defendant at the time he committed the acts alleged to be crimes. In order to establish this defense it is essential that purchasers of vehicles at Pueblo Ford Inc. be subpoenaed for the trial. The defense has no way of ascertaining the names and addresses of these prospective witnesses except through Pueblo Ford Inc."

Pueblo Ford, in its response to the motion, stated in part:

"It is respondent's position that this works a grave hardship on it to make available to defendant such records as during this period of time it sold approximately 850 motor vehicles at its business. It has the individual records of each of such sales. It does not have any compilation of the names and addresses of purchasers."

In this jurisdiction, a defendant's right to discovery and inspection is prescribed by Rule 195, Rules of Criminal Procedure, 17 A.R.S.:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the county attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

Our Supreme Court has pointed out that this rule does not inhibit a trial court, in the exercise of its inherent power, to permit discovery beyond the scope of the rule when essential to the administration of justice. State ex rel. Polley v. Superior Court, 81 Ariz. 127, 302 P.2d 263 (1956); State ex rel. Corbin v. Superior Court, 103 Ariz. 465, 445 P.2d 441 (1968). This "fundamental fairness" doctrine, i. e., affording a defendant a reasonable opportunity to prepare his defense, has been enunciated in situations where disclosure of the prosecution's case has been sought. Here, however, the requested inspection was directed to things in the possession of a third person.

The discovery available to a party in civil litigation is not equally available in criminal proceedings. State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887 (1954). In the federal hierarchy, discovery and inspection of items not within the possession, custody or control of the prosecution is not allowed. United States v. Birrell, 276 F.Supp. 798 (S.D.N.Y.1967); United States v. Kaskel, 18 F.R.D. 477 (E.D.N.Y.1956). Some state courts, however, interpret the "inherent power" of the trial court to include an order for production of books and records of a third person. See, e. g., State v. Wilde, 214 La. 453, 38 So.2d 72 (1948), cert. den. 337 U.S. 932, 69 S.Ct. 1484, 93 L.Ed. 1739; Townsend v. City of Helena, 244 Ark. 228, 424 S.W.2d 856 (1968); State v. Boutsikaris, 69 N.J.Super. 601, 174 A.2d 653 (1961). The last case cited points out that the defendant must show that the inspection would *reasonably* tend to lead to discovery of relevant evidence and recognizes that undue hardship to the inspectee would justify denial of inspection. In Townsend v. City of Helena, supra, the court required a prerequisite showing that the defendant could not obtain the sought-after records himself.

Here, Pueblo Ford asserted a claim of "undue hardship" in that there was no written compilation of purchasers' names and in order to obtain the names of the 850 purchasers of vehicles during the six-month period access to various records was required. Furthermore, defendant neither demonstrated that he could not obtain this information without such inspection nor that the inspection was *reasonably* calculated to lead to the discovery of relevant evidence. Even if the requested inspection is within the ambit of the trial court's inherent power, we cannot say that its denial of the defendant's motion constituted an abuse of discretion absent a minimal showing by the defendant of "exceptional circumstances." State ex rel. Corbin v. Superior Court, 6 Ariz.App. 414, 433 P.2d 65 (1967).

The defendant contends, for numerous reasons, that the trial court erred in not granting him a new trial as to all the charges.[1] In substance, he complains that he was not afforded fair trials because of lack of an impartial jury, an illegal search and seizure, lack of adequate counsel, and lack of a "fair" judge in the joint trial.

As to the jury, the defendant complains that it was composed of only one man and eleven women, that the man was biased because of his employment and because he had been a victim of a crime similar to one with which the defendant was charged; that one of the women jurors knew a member of the County Attorney's office; and that during the course of the forgery trial one of the jurors had read a newspaper account of the defendant's convictions of embezzlement and obtaining by false pretenses. We summarily dispose of all contentions with regard to the composition of the jury as showing no grounds for reversal in that no showing of actual prejudice has been demonstrated. State v. Webb, 101 Ariz. 307, 419 P.2d 91 (1966); People v. Hess, 104 Cal.App.2d 642, 234 P.2d 65 (1951); Wilson v. State, Okl.Cr., 458 P.2d 315 (1969).

Equally without merit is the "illegal search and seizure" argument for the reason that no evidence was admitted at trial which was the product of the purported illegal search.

Defendant's attack on the adequacy of his representation by counsel is primarily directed to matters of trial strategy and of counsel's judgment. To justify relief on the ground of inadequacy of representation of counsel, an extreme case must be disclosed and it must appear that counsel's lack of diligence or competence reduced the trial to a farce or sham. State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert. den. 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed. 2d 687. Effective representation of counsel cannot be equated with successful representation. State v. Hill, 104 Ariz. 238, 450 P.2d 696 (1969). Matters of trial strategy and tactics are committed to defense counsel's judgment, and claims of ineffective assistance cannot be predicated thereon. Barron v. State ex rel. Eyman, 7 Ariz.App. 223, 437 P.2d 975 (1968); Loftis v. State ex rel. Eyman, 4 Ariz.App. 3, 417 P.2d 374 (1966).

We have examined the record and find that defendant's attack upon his counsel is completely unwarranted. The fact that they did not agree as to the conduct of the defense does not establish inadequate representation, Craig v. State, 451 P.2d 368 (Nev.1969), nor does the amount of time defense counsel consulted with the defendant. State v. Knerr, 79 N.M. 133, 440 P.2d 808 (1968). Additionally, we conclude that defendant's attack on appellate counsel is likewise completely unwarranted. As we have indicated, counsel did all that was required of him by the United States Supreme Court and the Supreme Court of Arizona. Anders v. California, supra; State v. Leon, supra. His failure to argue frivolous or groundless matters does not give defendant cause to charge failure of representation. State v. Stevens, 69 Wash.2d 906, 421 P.2d 360 (1966).

It would appear that defendant predicates his attack on the fairness of the trial judge in the joint trial on the fact that the male juror, previously adverted to, was permitted to remain on the jury; that he failed to sequester the jury; that he failed to admonish the prosecuting attorney for saying it was time to make an example of the defendant; that a court reporter was not present during a post-verdict hearing;

---

1. The defendant's respective motions for a new trial, filed in propria persona, were filed more than three days after the respective verdicts. Under these circumstances, the trial court lacked jurisdiction to grant a new trial. State v. Hill, 85 Ariz. 49, 330 P.2d 1088 (1958); State v. Vasquez, 98 Ariz. 157, 402 P.2d 574 (1965).

that the trial judge said the defendant tried the court's patience; and that the sentence was excessive. We have already considered the defendant's contentions with regard to the jury and found them to be without merit. As to the purported remark of the prosecutor, we reiterate the rule that attorneys are given wide latitude in their arguments to the jury. State v. Goodyear, 98 Ariz. 304, 404 P.2d 397 (1965). We have examined the closing arguments in both trials and are unable to find any impropriety.[2]

Defendant complains of the court reporter's absence, and the consequent lack of verbatim transcript when a juror was questioned with regard to her having read a newspaper article during the course of trial. Suffice it to say that due process of law does not mandate a stenographic report of all criminal trials. State v. Crowder, 103 Ariz. 264, 440 P.2d 29 (1968). We have already discussed and rejected the defendant's contention with regard to the effect of the juror's reading the article in question.

As to the trial judge's single comment to the defendant about his patience being tried, it was not made in the presence of the jury, and we can hardly say, after examination of the record, that it was not justified. Throughout the proceedings, the trial judge manifested extreme patience with and consideration for the defendant, and we decline to attribute to this single articulation a connotation of bias. As to the sentences imposed, in view of the defendant's past history, we find no abuse of the trial court's discretion either as to the length of or the consecutive nature of the sentences imposed.

Our examination of the record discloses no error in either trial and we find sufficient evidence of the requisite elements of each offense to sustain the convictions thereof.

For the reasons herein stated, the judgments are affirmed.

HATHAWAY and HOWARD, JJ., concur.

---

2. In the trial on the charges of embezzlement and obtaining by false pretenses, the prosecutor pointed out that if practices such as the defendant's in dealing with car customers existed, they had to be stopped. In the trial on the forgery charge, he presented a similar argument, i. e., that "this type of thing should not be condoned and we certainly should put a stop to this type of thing."