540 P.2d 1219

**The STATE of Arizona, Appellee,**

v.

**Paul Joseph BOUILLON, Appellant.**

**No. 3150.**

Supreme Court of Arizona,
In Banc.

Sept. 30, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. By Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Michael E. Hurley, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of burglary in the second degree, A.R.S. §§ 13–301 and 13–302, together with a sentence thereon of not less than nine nor more than ten years in the Arizona State Prison.

Four questions are raised by this appeal:

1. Were photographs of the items taken in the burglary properly admitted into evidence in place of the actual items?

2. Was there sufficient evidence to corroborate the testimony of the accomplice which tended to connect the appellant with the commission of the offense?

3. Did the trial court err by not dismissing the allegation of a prior felony conviction where the prosecution failed to provide material concerning the prior conviction until the time for trial on that issue?

4. Was· it error for the trial court to refuse defendant's requested instruction on the evidence necessary to corroborate the testimony of an accomplice?

The facts necessary for the resolution of these questions are as follows. Shortly after noon on 6 December 1972, Police Officer Gerald Hossler noticed a car stopped on 27th Avenue (a dirt road) just north· of Southern Avenue. The trunk and both doors were open and the occupants, later identified as the defendant Bouillon and Richard O'Dell, were standing at the rear of the vehicle. Having decided to render assistance, Officer Hossler proceeded toward the vehicle. As he approached, the occupants closed the trunk, ran to their respective sides of the car, jumped in and the car sped north on 27th Avenue. Officer Hossler pursued the vehicle testifying at trial that initially the passenger's door remained open and that in the course of the chase defendant's car reached speeds approaching 50 m. p. h. before stopping just south of Broadway.

After checking. the defendant's driver's license, Officer Hossler requested the vehicle registration. As defendant reached into the car to retrieve the registration, Officer Hossler noticed what appeared to be a holster under the passenger's side of the seat. He then radioed for a back-up unit and placed the defendant and O'Dell in the back of his vehicle.

After retrieving the holster and a gun from under the passenger's side of the seat and discovering two pistols in the glove compartment and a fourth under the floor mat on the driver's side, Officer Hossler returned to his car and advised both suspects of their rights. After the back-up unit arrived, O'Dell admitted to another officer that the guns were stolen and told the officer the location of the house from which they were taken. A subsequent inventory of the vehicle resulted in the discovery of five rifles in the trunk. These were photographed at the scene while still in the trunk of the car.

At trial O'Dell testified that on the morning of 6 December 1972 defendant came to his house to see if he wanted to go "case a place." O'Dell testified that after discussing the matter for about 45 minutes he accompanied the defendant in the latter's car to a house located in south Phoenix. According to O'Dell the defendant had advised him that there were a number of firearms in the house. O'Dell further testified that after watching the house for a period of time he and the defendant went to the back of the house and

using screwdrivers to open the back door, entered the house and removed a number of rifles and pistols from the premises. They then loaded the guns into defendant's car and proceeded west to 27th Avenue where they decided to remove the guns from the passenger area of the vehicle and put them in the trunk. They were in the process of accomplishing this task when Officer Hossler appeared.

The defendant was charged with burglary and grand theft. The trial court granted defendant's motion for a directed verdict as to the grand theft charge and the defendant was convicted of the crime of burglary with a prior conviction and appeals.

## ADMISSIBILITY OF PHOTOGRAPHIC EVIDENCE

The weapons taken were listed in the complaint by description and serial number. Some months later, and after the preliminary hearing, the guns were released to the owner. Before this was done, however, the guns were photographed again by the police—once separately and once with the victim standing behind the guns. The photographs of the guns taken at the time of arrest and when they were turned over to the victim were introduced into evidence over defendant's objections. Admission was allowed only after the police officers testified as to the possession of the guns from the time of the arrest until they were returned to the victim and the victim testified that they were his guns.

The victim testified that he owned certain firearms and kept them in his home. He had seen these weapons on the morning of the burglary, at the preliminary hearing, and again at the police property room where they were photographed in his presence. On direct examination he identified the other guns depicted as his but later on cross-examination stated that he could not positively identify these remaining guns without examining the weapons themselves:

"Q What are you identifying on it, because you think those are yours or because you can see something in that picture that tells you it's yours; which is it?

"A The .243 is mine.

"Q That's the only thing you can identify in that photograph?

"A Positively this way, right, without close examination.

"Q Would you like to look at the picture a little closer?

"A You would have to have the weapons.

"Q You would have to have the weapons in order to be sure?

"A Not of the .243 I don't.

"Q You can identify that particular firearm?

"A Right.

"Q No question in your mind whatsoever?

"A Right.

"Q Is that correct?

"A Right."

Defendant contends that the exhibits were inadmissible because they were photographic representations of the stolen property and not the property itself.

In *State v. McQueen* (La.), 278 So.2d 114 (1973), the Louisiana Supreme Court faced a fact situation virtually identical to the one here presented. The defendant in that case was charged with a burglary involving certain rolls of copper wire. At trial photographs of the trunk of the vehicle in which defendant was arrested shortly after the burglary and the copper wire contained therein were introduced. In rejecting defendant's assertion that admission of the photographs was error, Justice Dixon stated:

"* * * Defendant argues that the proper foundation was not laid for the introduction of such evidence and that the tags and photographs were not the

'best evidence.' Defendant's arguments are without merit.

"The proper foundation was established for the introduction of the photographs and tags.

"R.S. 15:436 provides:

'The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced.'

"From the nature of this case, the D & E Construction Company tags taken from the rolls of copper wire and the photographs of the trunk of the car and its contents were the 'best evidence' of the rolls of the copper wire and their relationship to defendant. The actual copper wire need not have been produced in court because it was extremely heavy and a valuable commodity which need not have been removed from commerce during the pendency of defendant's trial." *State v. McQueen*, 278 So.2d at 118–119.[1]

In *State v. Estrella*, 257 Iowa 462, 133 N.W.2d 97 (1965), the court sustained the admission of photographs depicting a number of shirts stolen from a retail store and subsequently recovered. The photographs were identified by both the store owner and the police officer who took them as accurately depicting the property taken from the store. See also *State v. Giles*, 253 La. 533, 218 So.2d 585 (1969).

And our Court of Appeals has held that introductions of police photographs showing among other things a television set which had been the subject matter of a burglary was proper. *State v. Suarez*, 11 Ariz.App.17, 461 P.2d 496 (1969).

■ The foundation laid for these exhibits by the testimony of both the victim and Officer Hossler was more than adequate. To require the victim to endure the deprivation of his property from the date of the burglary to the completion of appellant's trial and appeal is adding insult to injury and when not necessary to the prosexecution of the defendant should be avoided.

Defendant, however, cites A.R.S. § 13–1471(A) and (C) which he asserts the prosecution violated in returning the property prior to trial. A.R.S. § 13–1471(A) and (C) provides:

"(A) When property alleged to have been stolen or embezzled comes into the custody of a peace officer or of a magistrate, he shall hold it subject to the order of the magistrate before whom the complaint is laid or who examines the charge against the person accused of stealing or embezzling such property.

* * * * * *

"(C) The magistrate shall, upon satisfactory proof of the ownership, order the property to be delivered to the owner upon his paying the necessary expenses incurred in its preservation. The order entitles the owner to demand and receive the property unless the property, or any part thereof, is required as evidence in any criminal action. If it is so required, it shall remain in possession of the officer or magistrate until the termination of the action."

■ Admitting arguendo that the State did not comply with this statute, we find no error. A.R.S. § 13–1471 does not purport to govern the admissibility of evidence. Rather it regulates the disposition

---

1. We note that the "best evidence rule," correctly stated, relates only to writings, requiring the production of the original document or writing unless unavailable. McCormick states the rule as follows:

" * * * in proving the terms of a writing where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick on Evidence, § 230, 2nd Ed. 1972.

Thus, the rule itself is inapplicable here, however, under the expanded meaning given to the term "best evidence" by the Louisiana statute R.S. 15:436, the reasoning of Justice Dixon's opinion is clearly applicable.

and return of stolen property as well as the preservation of evidence. The better practice would be to comply with the statute before returning the property to the victim. However, failure to comply with the statute, though it could be relevant in certain fact situations, does not necessarily affect the admissibility of the property or in this case photographs thereof.

## SUFFICIENCY OF THE CORROBORATING EVIDENCE

Defendant contends that the State's case against him rested solely on the uncorroborated testimony of an accomplice.

A.R.S. § 13–136 reads as follows:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

■■■ O'Dell was admittedly an accomplice and was the most damaging witness against the defendant. There was, however, other evidence to corroborate the testimony of the accomplice. For example, the possession of the guns shortly after they were taken.

" * * * Possession of recently stolen property warrants an inference that the possessor was the taker. *State v. Jackson,* 101 Ariz. 399, 420 P.2d 270 (1966). Such possession is not sufficient in and of itself to warrant conviction. However, in *State v. Smith,* 96 Ariz. 322, 395 P.2d 362 (1964) we held that possession of recently stolen property was sufficient corroboration of testimony of an accomplice." *State v. Brookshire,* 107 Ariz. 21, 23, 480 P.2d 985, 987 (1971).

We find no error.

## REFUSAL TO DISMISS THE ALLEGATION OF A PRIOR FELONY CONVICTION

The third issue raised by defendant is whether the trial court erred by not dismissing the allegation of a prior conviction when the prosecution failed to make materials concerning the prior conviction available to the defendant until time for trial on the prior conviction.

A.R.S. § 13–1649(C) reads as follows:

"(C) The court in its discretion may allow the allegation of a prior conviction at any time prior to trial, provided that when the allegation is filed, the state must make available to the defendant a copy of any material or information obtained concerning the prior conviction."

There can be little doubt that the prosecution failed to comply with the provisions of this statute. The addendum to the information alleging that defendant had been convicted of a prior felony was filed on 1 February 1973. However, the prosecution did not provide the defendant with a copy of the information or any material concerning the prior conviction until after the conviction on the crime charged, but prior to trial on the allegation of the prior conviction. When the issue was raised by the defendant the court directed the State "to make available to the defendant a copy of any material or information * * * concerning the prior conviction alleged." The prosecutor, as a result of the court's order, made further information available to the defendant including a fingerprint and picture record from the Arizona State Prison at the time of defendant's incarceration on the prior felony offense. Defendant was allowed some time to consider the new material before proceeding to trial and made no objection to proceeding when the matter was called.

■■■ The purpose of A.R.S. § 13–1649(C) is to provide notice to the defendant so that he may be prepared at trial to

refute the alleged prior conviction. While we do not view with favor the failure of the State to timely provide the information required by the statute, clearly this record reveals that there was no prejudice to the defendant resulting from the State's belated compliance with A.R.S. § 13–1649(C). We find no error.

## WAS THE JURY INSTRUCTION PROPER?

Defendant's final contention is that the court improperly instructed the jury as to the nature of the evidence necessary to corroborate the testimony of an accomplice. See A.R.S. § 13–136, supra.

The court instructed the jury on this issue as follows:

"An accomplice is a person who helped commit the crime or advised or encouraged the Defendant to commit the crime. You must determine whether any witness in this case is an accomplice.

"You are not permitted to determine guilt based only on the statement of an accomplice. There must be other evidence indicating that the Defendant committed the crime."

The defendant objected to this instruction requesting that a sentence taken directly from the statute be added:

"The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

We do not believe that the evidence supports the giving of the additional instruction requested by the defendant. The corroborating evidence does not merely show that an offense has been committed, but also shows that the offense was committed by the defendant. In other words, the corroborating evidence is not limited to showing that a burglary took place at the victim's house but the possession of the guns by defendant shortly after the burglary took place directly links him with this crime. Under this fact situation to instruct as defendant requested would be unnecessarily confusing to the jury if not in fact erroneous.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.