589 P.2d 5

**STATE of Arizona, Appellee,**

v.

**Thomas Laverne ROSE, a/k/a Thomas Lawrence Rose, Appellant.**

**No. 4393.**

Supreme Court of Arizona,
In Banc.

Dec. 22, 1978.

John A. LaSota, Jr., Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Edward C. Voss, Deputy Public Defender, Phoenix, for appellant.

Thomas L. Rose, in pro per.

GORDON, Justice:

Appellant Thomas Laverne Rose, hereinafter referred to as defendant, appeals his conviction for kidnapping and burglary in violation of A.R.S. §§ 13–491 D, 13–301 and 13–302. Taking jurisdiction pursuant to 17A A.R.S., Supreme Court Rules, rule 47(e)5, we affirm the kidnapping conviction and reverse the burglary conviction, remanding for a new trial.

In the early morning hours of December 31, 1976 the home of John and Donna Cullin was entered illegally. The Cullins, their two children and Donna Cullin's sister, Dawn Zimmerman were asleep in the house. Donna Cullin awoke to see a man standing in her bedroom, and watched him remove her husband's shotgun from its rack. John Cullin was also awakened, but knowing the gun to be loaded, lay back down and pretended to be asleep. The intruder then went into the living room where he awakened Dawn Zimmerman and at gun point forced her to accompany him out of the house. Shortly thereafter, John Cullin ran out of the house after the assailant. The suspect pushed Dawn away and fled.

Officer Peterson, who was on duty eight blocks from the Cullin home, received the call that a kidnapping was in progress. While proceeding to the site, he stopped a speeding car driven by the defendant. The officer observed a shotgun lying on the floorboard of the vehicle together with other items of personal property ultimately identified as belonging to the Cullins. The defendant was brought to the Cullin's apartment and identified by Dawn Zimmerman and Donna Cullin as the intruder.

The following issues are raised by this appeal:

1. Whether it was error to admit evidence that the defendant gave false identification to a police officer.

2. Whether the defendant's rights to a speedy trial and to a timely initial appearance and preliminary hearing were violated.

3. Whether the trial court erred in limiting the defendant's right to cross-examine one of the victims regarding certain alleged transactions between the defendant and the victim.

4. Whether the trial court abused its discretion by refusing to strike seven jurors for cause and by failing to declare a mistrial after a prospective juror cited the details of a kidnapping in which he was the victim.

5. Whether the jury's verdict can now be challenged.

6. Whether the defendant was prejudiced by not being given additional medical testing.

7. Whether photographs of the stolen property were properly admitted into evidence.

8. Whether the in-court identifications of the defendant should have been suppressed.

9. Whether the defendant was prejudiced by the unavailability of a defense witness at trial.

## EVIDENCE OF OTHER BAD ACTS

■ Evidence that the defendant had committed certain bad acts, other than those for which he is now on trial, is usually inadmissible. *State v. Mitchell,* 112 Ariz. 592, 545 P.2d 49 (1976); *State v. Tostodo,* 111 Ariz. 98, 523 P.2d 795 (1974); *State v. Jaramillo,* 111 Ariz. 2, 522 P.2d 1079 (1974). It is not proper to base a presumption of guilt on the grounds that having

committed one crime, it is likely the defendant would commit another. *Dorsey v. State,* 25 Ariz. 139, 213 P. 1011 (1923). The relevance of the prior bad act, however, may outweigh any potential prejudice if the illegal conduct does more than discredit the character of the defendant. *See State v. Ballesteros,* 100 Ariz. 262, 413 P.2d 739 (1966). Other crimes or wrongful acts of the defendant are, therefore, admissible to show the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. 17A A.R.S., Rules of Evidence, rule 404(b). In all these situations the bad acts shed some light on the crime charged and not merely on the defendant's criminal propensity.

In the instant case, approximately an hour prior to the arrest of the defendant on the kidnap-burglary charges, and at a location not far from the site of the crimes charged, the defendant was involved in a minor traffic accident. At the accident scene, he identified himself with a Colorado driver's license issued to Andrew James Mathis, Jr. The officer noted nothing unusual about the rear license plate of the car. The same officer subsequently arrested the defendant on the kidnap-burglary charges. At that time, the rear license plate had been masked and the front license plate was in the trunk of the car. Defendant's showing of false identification earlier in the evening was admitted into evidence as a prior bad act. Defendant asserts this was inadmissible. This Court does not agree.

The giving of phony identification coupled with the later hiding of the license plates suggest a purposeful concealment of identity. The defendant was charged with burglary, which requires proof of entry with intent to commit a theft or other felony. A.R.S. § 13–302. The trial court admitted the giving of false identification to an officer because of its bearing on the issue of intent.

■■ Intent is frequently proved by evidence of other criminal acts of the same character, because the reoccurrence of an act controverts a claim that it was done by accident or mistake. *See State v. Tisnado,* 105 Ariz. 23, 458 P.2d 957 (1969); *State v. Boozer,* 80 Ariz. 8, 291 P.2d 786 (1955); *Hightower v. State,* 62 Ariz. 351, 158 P.2d 156 (1945). Intent, however, is simply the state of mind that coexists with the doing of an act, and can also be proved by whatever evidence would otherwise be receivable to show design, knowledge or emotion. *See* 2 J. Wigmore, Evidence § 242 at 38 (3d ed. 1940).

■ The evidence in the instant case is not of a prior similar burglary or kidnapping but nonetheless is admissible to show the defendant's intent. Evidence of preparation,[1] or circumstances that complete the story of the crime [2] are recognized as exceptions to the general prohibition of admitting evidence of other bad acts. The evidence in this case could be characterized and properly admitted under either of these exceptions. Moreover, evidence of preparation necessarily discredits a claim that the act was done by accident or mistake and sheds light on the defendant's intent. The evidence was, therefore, also properly admitted under the intent exception of 17A A.R.S., Rules of Evidence, rule 404(b).

■ To be admissible into evidence, other bad acts must also not be too misleading or prejudicial. *United States v. Barrett,* 539 F.2d 244 (1st Cir. 1976). These questions are properly left to the trial judge who has wide discretion as to the admissibility of prior acts. *State v. Fierro,* 107 Ariz. 479, 489 P.2d 713 (1971); *United States v. Cochran,* 499 F.2d 380 (5th Cir. 1974). We find no abuse of discretion here. The prior illegal act occurred shortly before the crimes charged and was not of such a violent or depraved nature as to outweigh its relevance with prejudice. The defendant's concealment of his identity was pertinent to his preparation and plan of the burglary for which he is charged. As such,

---

1. *United States v. Leftwich,* 461 F.2d 586 (3d Cir. 1972); *See United States v. Persico,* 425 F.2d 1375 (2d Cir. 1970).

2. *State v. Hardin,* 99 Ariz. 56, 406 P.2d 406 (1965).

it reflects his intent to commit the illegal act and was properly admitted into evidence.

## RIGHTS TO A SPEEDY TRIAL AND TO A TIMELY INITIAL APPEARANCE AND PRELIMINARY HEARING

This Court finds that the defendant's rights to a speedy trial and to a timely initial appearance and preliminary hearing were not violated.

■ A defendant's right to a speedy trial is provided for in 17 A.R.S, Rules of Criminal Procedure, rule 8.2. The defendant must be tried within 150 days of his arrest or service of summons and also within 120 days of his initial appearance or within 90 days of his arraignment. A trial within the shorter of the two latter dates is mandated when the defendant is in custody. Meeting the requirement of the longer of the two is sufficient when the defendant is not in custody.

The defendant was arrested on December 31, 1976. He was arraigned on January 1, and released on bail. The charges against him were dismissed without prejudice and later refiled. He was served with a summons on the refiled charges on February 4 and given an initial appearance on February 8. Sixteen days later, on February 24, a preliminary hearing was held, followed by the filing of an information on March 2 and an arraignment on March 4. Defendant was brought to trial on September 7.

■ When a case is dismissed without prejudice, the speedy trial time limits begin anew, absent a showing of bad faith on the part of the prosecution or prejudice to the accused. *See State v. McDonald,* 117 Ariz. 180, 571 P.2d 677 (1977); *State v. Pogue,* 113 Ariz. 478, 557 P.2d 163 (1976); *State v. Johnson,* 113 Ariz. 506, 557 P.2d 1063 (1976); *State ex rel. Berger v. Superior Court,* 111 Ariz. 524, 534 P.2d 266 (1975).

A dismissal without prejudice to refile the charges would have little meaning if it were not implied that the time limits of Rule 8 would begin anew upon refiling. To hold otherwise would mean that, in some cases, it would be pointless to refile because the time limits would already be close to expiration. *State v. Avriett,* 25 Ariz.App. 63, 540 P.2d 1282 (1975). The record reveals no bad faith on the part of the prosecution or prejudice to the defendant that would mandate measuring speedy trial from his initial arrest. It is the defendant, not the prosecution, who extended the trial time by an additional 100 days, as will be discussed below. The defendant was in jail during most of this time. His jail time, however, was not related to the charges involved in this case and was, therefore, not a prejudice that resulted from the instant case. The record reveals no indication that the defendant's case was in any way hampered by a September 7 trial date. His speedy trial rights must, therefore, be measured from his February 4 summons.

■ Certain periods are excludable when measuring speedy trial times and include delays occasioned by or on behalf of the defendant and delays resulting from continuances. 17 A.R.S., Rules of Criminal Procedure, rule 8.4. Any continuances are limited to 30 days. 17 A.R.S., Rules of Criminal Procedure, rule 8.5. On April 21, defendant made a motion for a mental examination. He was determined competent 68 days later, on June 28. On July 28, defendant moved for a continuance, which was granted. The new trial date was August 29, 1977, so that an additional 32 days are excludable.[3] Therefore, a total of 100 excludable days must be figured in when calculating for speedy trial time limits.

■ One hundred and fifty days from defendant's summons on February 4 is July 4. Adding in the 100 excludable days

---

**3.** In computing times, the last day of any period shall be included unless it is a Saturday, Sunday or legal holiday, in which case the period shall run until the end of the next day, which is neither a Saturday, Sunday, nor a legal holiday. 17 A.R.S., Rules of Criminal Procedure, rule 1.3. The defendant's 30 days continuance ended on August 27, which was a Saturday. Therefore, the time limit was properly extended for an additional two days, to Monday, August 29.

brings us to October 12, well after the date of the defendant's trial. The defendant was released on bail from his arrest on the charges in this case. Therefore, the requirement that he be tried within 120 days of his initial appearance on February 8 must be met.[4] One hundred and twenty days from February 8 is June 8. Adding the 100 excludable days bring us to September 16, or 9 days after the defendant's trial. The defendant's speedy trial rights have not been violated.

■ If the criminal proceedings against a defendant are commenced by the service of a summons, he must be given an appearance within seven days. See 17 A.R.S., Rules of Criminal Procedure, rules 3.1.b and 3.2.b. The defendant was served with a summons on February 4 and given an initial appearance on February 8, well within the seven day period.

■ A reading of rule 3.1[5] further reveals that serving the defendant with a summons as opposed to issuing a warrant for his arrest was proper, because it was reasonable to believe that the defendant would respond to it. The rule does state that commencing criminal proceedings by a summons is improper if the defendant is in custody. This provision, however, must logically be interpreted to mean "in custody on this charge." To allow the police to pick up a suspect without arrest and then issue him a summons to appear would provide a loophole for violating his speedy trial rights and his rights to a timely initial appearance and preliminary hearing.

No prejudice results, however, from the circumstances of this case. The defendant's presence in jail was on totally unrelated charges safeguarded by the speedy trial

rights stemming from that arrest. It was unnecessary to issue a warrant on the current charges, because it was clear that he would be available to appear in court. Although it would be improper to place a man in custody on charges and then avoid arrest by commencing the criminal proceedings against him with a summons, we find no error in doing so when he is in custody on totally unrelated charges.

■ If a defendant is not in custody, he must also be given a preliminary hearing within 20 days of his initial appearance. 17 A.R.S., Rules of Criminal Procedure, rule 5.1. The defendant's preliminary hearing followed his initial appearance by 16 days. Since he was not in custody on the charges involved in this case, his right to a timely preliminary hearing has not been violated. See footnote 4.

## LIMITATIONS ON CROSS–EXAMINATION

■ The trial court declined to allow defense counsel to cross-examine one of the victims regarding an alleged illegal drug transaction between the victim and the defendant. Defense counsel was permitted to examine the victim about all legal aspects of an alleged meeting between the two, but not the alleged drug sale. The court advised the defendant that he would be allowed to cross-examine the victim on the alleged sale if he were willing to take the stand and put the sale into evidence. The defendant contends that the drug sale was pertinent to the issue of his intent, at the time of entry, which is an element of burglary. A.R.S. § 13–302. Not allowing him to elicit testimony in support of a potential defense without first taking the stand, placed an unreasonable burden on his right to remain silent.

4. At the time the defendant was released on the charges that comprise this case, he was in custody on unrelated charges. Nonetheless, for speedy trial purposes, each charge must be viewed individually. Thus, despite his presence in jail on other charges, he is considered out of custody on the instant charges for the purpose of computing speedy trial and preliminary hearing time limits.

5. "A summons may issue if the defendant is not in custody and the offense charged is baila-

ble as a matter of right, and there is reason to believe that the defendant will respond to it. * * * If a defendant who has been duly summoned fails to appear, or there is reasonable cause to believe that he will fail to appear, or if the summons cannot readily be served or delivered, an arrest warrant shall issue." 17 A.R.S., Rules of Criminal Procedure, rule 3.1.b and c.

The defendant testified at the voluntariness hearing that he had gone to the victim's apartment earlier in the evening to "get his money back" because he felt that pills, which he had purchased from the victim, had been misrepresented. He did not, however, go into the Cullen's home at that time. His conviction for burglary is based on his entry into the same home several hours later.

If an innocent interpretation can be placed upon the defendant's intent, at the time of entry, it would operate as a defense to the charge of burglary. Intending to break into the victim's home to "get his money back" would seemingly supply the guilty intent needed to support a burglary conviction. The defendant might be claiming, however, that his intent, when entering the victim's apartment, was merely to call the whole thing off, return the drugs, and attempt to "get his money back" by negotiation with the victim. As improbable as this possibility may be, the defendant should have been allowed to present evidence of his innocent intent without forfeiting his Fifth Amendment right to remain silent.

A collateral effect of allowing the cross-examination may be to darken the character of the victim with evidence of his own illegal activity. The legitimate purpose, however, of allowing the defendant to present evidence of an element of the crime, mandates that the cross-examination be allowed. We, therefore, reverse the conviction for burglary, and remand for a new trial.

Although the testimony that defendant sought to elicit from the victim might have been a defense to burglary, it would not, as a matter of law, be a defense to the kidnapping charge. Therefore, the conviction for kidnapping need not be reversed on these grounds.

## CHALLENGES TO JUROR AND TO THE PANEL

Defendant made a motion for mistrial after a prospective juror indicated during voir dire that he had been the victim of a kidnapping, and related the details of the incident before the panel. The defendant later moved to strike for cause the kidnap victim and six veniremen who had been victims of burglaries. The court denied both motions.

It is the trial court and not this Court which is in a position to determine first hand whether a juror can render a fair and impartial verdict. A clear showing of an abuse of discretion is, therefore, needed to overrule the trial judge's determination. *State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974); *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965); *State v. Sorrell,* 95 Ariz. 220, 388 P.2d 429 (1964). The defendant must show the jury has been biased or that the selection process was somehow discriminatory. *State v. Stolze,* 112 Ariz. 124, 539 P.2d 881 (1975).

The kidnapping of the prospective juror took place in 1933 when an armed hitchhiker left him bound on the desert and stole his car. The juror assured the judge that the experience would not effect his ability to serve fairly and impartially and that he was able to recognize that this defendant had had nothing to do with his own kidnapping. Because of the remoteness of his experience, its dissimilarity to the kidnapping on trial, and the juror's own assurances, the trial judge did not abuse his discretion in refusing to grant the challenge of the juror for cause. Having been the victim of a crime similar to one with which the defendant is charged does not mandate a venireman's dismissal. Actual prejudice must first be shown. *State v. Streett,* 11 Ariz.App. 211, 463 P.2d 106 (1969); *State v. Rivera,* 85 N.M. 723, 516 P.2d 694 (1973); *See also, Lopez v. State,* 544 P.2d 855 (Wyo. 1976).

The defendant further contends that the details given by the juror who was kidnapped were excessive and therefore prejudiced the entire panel. The extent of voir dire examination is left to the discretion of the trial court. *State v. Smith,* 114 Ariz. 415, 561 P.2d 739 (1977). The court had a duty to elicit some detail about the

juror's kidnapping experience to determine the absence or presence of any prejudice and to ascertain if the experience would serve as a reason to challenge him for cause. *See State v. Taylor,* 9 Ariz.App. 290, 451 P.2d 648 (1969). The facts elicited by the court were not so excessive as to necessarily prejudice the other veniremen. The defendant has failed to show that any other juror, let alone the entire jury panel, was prejudiced by the comments of one juror. *See State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974). We therefore find no abuse of the trial court's discretion, and no error.

The trial court's refusal to strike the six burglary victims for cause was also not error. As has already been stated, a juror need not be stricken for cause simply because he was the victim of a crime similar to one with which the defendant is charged. *Streett, supra.* Since it was not shown that these jurors were incapable of rendering a fair and impartial verdict, excusing them for cause was not mandated. 17 A.R.S., Rules of Criminal Procedure, rule 18.4(b). The proper procedure was for the defense attorney to exercise his peremptory challenges against these veniremen. After he had done so, only one burglary victim remained on the jury.

We uphold the trial court's denial of the motions to strike for cause and the motion for mistrial.

## IMPEACHING THE JURY'S VERDICT

 Defendant complains that the jury's verdict was not unanimous and supports this contention by statements of the defense attorney that two of the jurors told him they did not agree with the verdict. The general rule is that a jury cannot impeach its own verdict, *See, State v. Mangrum,* 98 Ariz. 279, 403 P.2d 925 (1965); *State v. Murphy,* 79 Ariz. 161, 285 P.2d 614

(1955). Nor is it proper to impeach a verdict on the hearsay statements of a third person or defense counsel. *State v. Cookus,* 115 Ariz. 99, 563 P.2d 898 (1977).

 The defendant contends, however, that the verdict should be impeached because the jurors were not individually polled in open court. This is not the law. In the absence of a request, a court has no duty to poll the jury, and a failure to do so is not a denial of the defendant's constitutional rights. *State v. Madden,* 104 Ariz. 111, 449 P.2d 39 (1969); *Mull v. United States,* 402 F.2d 571 (9th Cir. 1968). The jury was asked collectively if this was their true verdict, and they indicated that it was. The defendant's attorney did not request that the jury be individually polled, nor did he respond affirmatively when the judge asked him if he wanted a poll to be taken. Failure to poll the jury cannot now be relied on to mandate an otherwise impermissible impeachment.

 A verdict can only be impeached and a new trial granted if a juror or jurors have been guilty of misconduct. 17 A.R.S. Rules of Criminal Procedure, rule 24.1.[6] The record reveals no evidence or contention that any misconduct took place. Absent these, the jury's verdict must stand. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976).

## DENIAL OF FURTHER MEDICAL TESTING OF THE DEFENDANT

The defendant next complains that the court erred by not ordering an additional neurological examination. A.R.S. § 13–1621 delineates the procedure for assessing the defendant's mental condition. If the court determines that reasonable grounds exist, it shall appoint two or three impartial medical experts to examine the defendant

---

**6.** Rule 24.1.c(3) lists the following as juror misconduct which would merit a new trial:

(i) Receiving evidence not properly admitted during the trial;

(ii) Deciding the verdict by lot;

(iii) Perjuring himself or willfully failing to respond fully to a direct question posed during the voir dire examination;

(iv) Receiving a bribe or pledging his vote in any other way;

(v) Becoming intoxicated during the course of the deliberations; or

(vi) Conversing before the verdict with any interested party about the outcome of the case.

and to testify regarding his mental condition. If the court then finds that the defendant is able to understand the proceedings against him and to assist in his own defense, the regular proceedings shall continue without delay.

In the instant case, the provisions of A.R.S. § 13–1621 were met. The court appointed Dr. Howard S. Gray and Dr. Otto L. Bendheim to serve as mental health experts. Both men examined the defendant and opined that he was competent to stand trial and that at the time of his illegal acts he had been aware of their nature, quality and wrongfulness.

Dr. Bendheim's report does suggest the potential value of having the defendant studied neurologically, but adds that he doubts that the outcome of such a study would change his opinions. Additional tests are not mandated when they are at best of questionable value. The trial judge had been given two expert opinions, which concluded that the defendant was competent to stand trial and was aware of the nature and quality of his acts. There is no provision in the statutes that requires additional medical examinations. A.R.S. § 13–1621; *State v. Cooper,* 111 Ariz. 32, 523 P.2d 60 (1974). Under these circumstances, failing to order further medical testing was not an abuse of the trial judge's discretion.

## ADMISSIBILITY OF PHOTOGRAPHIC EVIDENCE

The defendant alleges that the court erred when it introduced photographs of the stolen property in place of the items themselves. This Court rejected an identical argument in *State v. Bouillon,* 112 Ariz. 238, 540 P.2d 1219 (1975); *see also State v. Suarez,* 11 Ariz.App. 17, 461 P.2d 496 (1969). A proper foundation for the admission of the photographs was laid by the officer who photographed the items and two of the victims. "To require the victim to endure the deprivation of his property from the date of the burglary to the completion of appellant's trial and appeal is adding insult to injury and when not necessary to the prosecution of the defendant should be

avoided." *Bouillon,* 112 Ariz. 238, 241, 540 P.2d 1219, 1222.

The defendant has been charged with burglary, which requires proof of entry with intent to commit theft or a felony. A.R.S. § 13–302. The identification of the property by photograph was adequate to show theft and, hence, was not error. We, therefore, need not decide whether the photographs would have been sufficient evidence if the value of the stolen property were at issue.

## ITEMS NOT IN THE RECORD

The defendant contends that the in-court identification of him by two witnesses was tainted by their being allowed to observe him at the courthouse prior to trial. He also alleges prejudice, because his wife was in the hospital at the time of trial and was unable to testify. No evidence of either of these instances appears in the record.

The defendant is incorrect when he claims that the first identification of him took place at Justice Court. He was identified at a one man show up between 30 and 45 minutes after the crime. At a Dessureault Hearing the court found that the one man show up had not been unduly suggestive and that each of the witnesses had had a sufficient opportunity to observe the defendant at the time of the crime. The defendant, however, is now making a totally new challenge to the in-court identification. There is no evidence in the record of the incident to which he refers. We must, therefore, presume that the challenged procedures did not taint the in-court identification. "This presumption we deem conclusive for the obvious reason that all litigation, even criminal, must end at some point." *State v. Dessureault,* 104 Ariz. 380, 384, 453 P.2d 951, 955 (1969).

Although this Court is required to search the record in all criminal cases for fundamental error, A.R.S. § 13–1715 B, *State v. Bradley,* 99 Ariz. 328, 409 P.2d 35 (1965); *State v. Burrell,* 96 Ariz. 233, 393 P.2d 921 (1964), in doing so it is necessarily limited to a study of the evidence presented

142

in the record. *State v. Sheffield,* 104 Ariz. 432, 454 P.2d 864 (1969); *State v. Peters,* 60 Ariz. 102, 131 P.2d 814 (1942). Nowhere in the record is there any reference made to a missing defense witness, nor does defense counsel ever ask for a continuance of trial because of the unavailability of a witness.

Relief, therefore, must be denied on both these grounds because of the absence of any mention of either issue in the record.

The judgment and sentence of the Superior Court is, therefore, affirmed in part and reversed and remanded in part for proceedings not inconsistent with this opinion.

CAMERON, C. J., and STRUCKMEYER, V. C. J., and HAYS, J., concur.

HOLOHAN, Justice, dissenting.

The limitation on the cross-examination of the victim, John Cullin, should not be held to be error. The victim had testified that he had never met the appellant, and the victim testified out of the hearing of the jury that he had never sold any drugs to appellant. Without any further connection there was no evidence to support the innocent entry theory. Since the appellant did not intend to testify there was nothing upon which the defense could rely for the innocent entry defense.

In *State v. Fleming,* 117 Ariz. 122, 571 P.2d 268 (1977) this court pointed out that the right of cross-examination does not confer a license to run at large. The only purpose of the proposed cross-examination was to place an issue before the jury by insinuation and speculation. The trial court properly precluded such a procedure. *See State v. Singleton,* 66 Ariz. 49, 182 P.2d 920 (1947).

I concur in the affirmance of the kidnapping conviction, but I dissent from the reversal of the burglary conviction, believing that it also should be affirmed.