344 P.2d 486

**Albert J. FIRCHAU, Appellant,**

v.

**BARRINGER CRATER CO., a corporation, Appellee.**

**No. 6667.**

Supreme Court of Arizona.

Sept. 30, 1959.

216

Wilson, Compton & Wilson, Flagstaff, and Lewelling & Gies, Salem, for appellant.

Mangum & Christensen, Flagstaff, for appellee.

UDALL, Justice.

This is an appeal by defendant Albert J. Firchau from an order of the lower court denying a motion to dissolve the temporary restraining order theretofore issued and the granting of an injunction pendente lite to plaintiff-appellee. We shall hereafter refer to the parties as they were designated in the trial court, i. e., plaintiff and defendant.

The facts giving rise to the appeal are as follows: The Barringer Crater Company, a corporation, as plaintiff, on October 23, 1957, brought an action against defendant-appellant, Albert J. Firchau, to quiet its title to:

"* * * sections 13 and 24, Township 19 North, Range 12½ East, G. & S. R. B. & M., Coconino County, Arizona, together with the placer mining claims designated by the surveyor General of the United States as Lot No. 1806, known as the Venus, Mars, Jupiter, and Saturn Placer Mining Claims."

Also, injunctive relief and damages were sought against defendant. On the same

day the complaint was filed, the plaintiff—without notice to defendant—obtained from the court a temporary restraining order, and an order to show cause on November 1, 1957, why a preliminary injunction should not be ordered pendente lite. A bond of $1,000 was exacted and later furnished by plaintiff. From the court's minutes, dated November 1, 1957, it appears that by stipulation of counsel the hearing on temporary restraining order and order to show cause was ordered continued until November 18, 1957, and the temporary restraining order was directed, in the interim, to remain in full force and effect.

On November 18, 1957, defendant filed his answer wherein he claimed to be in lawful possession of the premises under an express contract in writing for the working, mining and development of said property; and by a separate defense and counterclaim he asked for a dissolution of the restraining order and for damages, plus attorney's fees. On the last mentioned date—with all parties represented—a day-long hearing was had on the temporary restraining order and the order to show cause. A half dozen witnesses testified, and numerous documents were admitted in evidence as exhibits, whereupon the court took the matter under advisement and asked for briefs. Thereafter, on December 24, 1957, there was filed with the clerk a letter from the presiding judge directing the entry of the following order, viz.:

"It is ordered that the injunction now in force be continued, in conformity with the prayer of the complaint, and the Motion to Dissolve said injunction is hereby denied."

Said order was properly entered and docketed by the clerk. A motion for new trial was filed and denied by operation of law. This appeal, under A.R.S. section 12–2101, subd. F, par. 2, followed.

There are but two assignments of error, the first of which reads:

"The court erred in denying defendants' motion to dissolve the temporary restraining order and entering Judgment in favor of plaintiff for the reason and upon the ground that the acts restrained involved the working and mining of a mining claim and was issued without notice to the defendants contrary to the provisions of A.R.S. section 12–1807, and said proceedings were therefore void."

The section of the code above referred to is as follows:

"An injunction against the working and mining of a lode or mining claim shall not be granted without notice to the opposite party, and no preliminary injunction or temporary restraining order shall be issued to prevent the working or mining pending

hearing of the application for the injunction." (Sec. 12–1807)

Though this unique section, unchanged in phraseology, has been a part of our statutory law at least since the adoption of the Civil Code, Revised Statutes, 1913 (Section 1465)—prior thereto it appeared in substance as Section 2746, R.S. '01—it has · never heretofore been interpreted by this court. Its source or purpose and scope is not readily apparent, though possibly it was considered by the legislature that the ordinary mining claim could hardly be subject to irreparable damage through the continued working or mining of the claim during the period of the notice—this for the reason that the interest of the parties in a mining claim is primarily in the minerals, and not in the property as such. Here, however, we have a much more involved and complicated situation. It will be noted that we are dealing strictly with fee lands and that areas and interests other than the four patented placer claims are sought to be protected. The placer claims in question cover what is known as "Meteor Crater", created by a falling meteor, which is widely recognized as a scientific phenomenon. It is a tourist and scenic attraction; and this part of the property in question was under lease to the Bar-T-Bar Ranch, Inc. for these purposes long prior to any dealings between plaintiff and defendant.

The following quotation from the temporary restraining order, stating the grounds for its issuance, is self-explanatory:

"The injury, loss and damage which plaintiff claims in the verified Complaint and Motion for this Temporary Restraining Order appears to the Court to be immediate and irreparable for the reason that it is represented by said Motion and verified Complaint that defendants, without right or authority assert a right to enter upon said property and to grade and construct roads and to explore and drill the same for mineral bodies, and if discovered to mine the same and to control the aforesaid premises and appropriate the same and the use and occupation thereof to the defendants exclusively, so as to deprive the plaintiff of its right of ownership in and to said lands and to thereby destroy the value of said premises as a scenic and tourist attraction; and for all such reasons, this Temporary Restraining Order is granted, without notice to the defendants herein of a hearing thereon."

With these added factors it seems doubtful whether, under the peculiar facts of this case, the legislature intended by enactment of the statute in question to deny plaintiff immediate relief without notice.

However, assuming, without deciding, that section 12–1807, supra, is applicable and governs rather than Rule 65(d), Rules of Civil Procedure, 16 A.R.S.—which rule undoubtedly formed the basis for the issuance of the order in question—because some mining operations are concededly involved here, still we believe that defendant is endeavoring to unduly narrow the issue by contending in his brief

"* * * that the Court did not decree an injunction but confined his Judgment to the temporary restraining order which was the only injunction in force at the time of making the order, *so we are concerned only with the validity of the restraining order.*" (Emphasis supplied.)

As a matter of law the temporary restraining order became functus officio when superseded by the court's orders of November 18th and December 24, 1957. The latter order—which is the subject of this appeal—as we interpret it, in effect, granted a temporary injunction after a full hearing thereon. The distinction is succinctly stated in 28 Am.Jur., Injunctions, section 11, viz.:

"§ 11. *Restraining Orders.* A temporary restraining order, while in effect a species of injunction, is in some respects to be distinguished therefrom. It is an interlocutory order or writ issued by the court upon an application for an injunction, and is intended as a restraint on the defendant until the propriety of granting a preliminary injunction can be determined, thus going no further in its operation than to preserve the status quo until that determination. When that determination is made, the *whole force* of the temporary restraining order ceases *by its own limitations.* It is intended only as a restraint on the defendant until the propriety of granting an injunction pendente lite can be determined, and it goes no further than to preserve the status quo until that determination. Although a temporary restraining order has the force and effect of an injunction until superseded, it *becomes functus officio when the temporary injunction is granted, having then served its purpose.* In its usual form it fixes a day for the defendant to appear and show cause why a temporary injunction should not be issued, and continues the order in force and effect until such hearing. * * *" (Emphasis supplied.)

Furthermore it will be remembered that on November 1st, by stipulation of the parties, the court restrained further activities by defendant until the date of the postponed hearing which was held on November 18, 1957. Then at the close of plaintiff's evidence the court denied defendant's motion to dissolve the restraining order

and later exercised its equitable jurisdiction to grant injunctive relief, thereby preserving the status quo until the case could be determined upon its merits. The question of damages and whether a permanent injunction should finally issue still remain to be determined.

It is stated in 28 Am.Jur., Injunctions, section 256:

" * * * Even though notice is required, the unauthorized issuance of a restraining order without it furnishes no reason for refusing a temporary injunction after a hearing * * *."

We hold there is no merit to this first assignment.

The second assignment of error is:

"The Court erred in denying defendants' motion for new trial and entering Judgment in favor of the plaintiff for the reason that the Judgment is not justified by the evidence and is contrary to law in that:

"The *evidence is conclusive* that the defendants were lawfully upon the premises by virtue of a written contract with plaintiff for the purpose of exploring, mining and development of the property and the injunction was therefore wrongfully issued." (Emphasis supplied.)

In support thereof two propositions of law are advanced, viz.:

"Where a person makes an offer and requires or authorizes the offeree, either expressly or impliedly to send his answer by post * * * and the answer is duly posted * * *, the acceptance is communicated, and the contract is complete from the moment the letter is mailed." Citing, Cohen v. First National Bank of Nogales, 22 Ariz. 394, 400, 198 P. 122, 124, 15 A.L.R. 701.

"An injunction will not issue to restrain a lawful act." Citing, Jones v. Santa Cruz County, 72 Ariz. 374, 236 P.2d 361, 364.

Counsel for plaintiff does not question the correctness of these abstract propositions of law, but he does challenge their applicability to the over-all evidence shown by the record. In support of their position it is apparent defendant's counsel are relying upon the testimony of Firchau that during the early part of January, 1957, in the presence of his attorney, he signed the proposed lease agreement, dated December 12, 1956, submitted and theretofore signed by plaintiff; supporting this statement is the testimony of his attorney, Lawrence Morley of Lebanon, Oregon, and that of the secretary, Mrs. John Carlson, who stated that she mailed the letter on the date it was signed. Inasmuch as there was no direct contradiction of this testimony as to the signing and mailing of the agreement, it is claimed this conclusively proves (a)

that a binding agreement was entered into between the parties; (b) the defendant was lawfully on the property of the plaintiff performing this agreement, and that hence an injunction could not issue to restrain such act.

Were this all of the evidence, defendant's position would be correct, but we must consider all of the evidence and, furthermore, construe it in a light most favorable to a sustaining of the order in question. After carefully examining the reporter's transcript and documentary exhibits admitted into evidence, we are of the opinion the record is such that the trial court was not compelled to find *the evidence was conclusive* that an agreement had been entered into and defendant was therefore lawfully upon the premises. While there was no express finding on the matter, the order entered constituted at least an implied tentative determination that there was no binding lease agreement between the parties.

We shall briefly summarize some of the contra evidence that led us to state, supra, that the evidence was not conclusive. The parties first corresponded in 1954, discussing the possibility of extracting the meteorite from the crater. Defendant and the president of the plaintiff corporation (D. Moreau Barringer) met personally in November, 1956, and further discussed this project. The latter, under date of November 15, 1956, prepared and signed a memorandum of this meeting, setting forth the conditions under which it proposed to enter into an agreement, and forwarded a copy to defendant for his signature. Defendant returned a signed copy to the plaintiff. Obviously this document was intended only as an "outline of a proposed agreement" to be later prepared, though defendant now attempts to place some reliance thereon. On December 12, 1956, plaintiff prepared and signed a draft of an agreement based upon the prior memorandum, but before sending same, plaintiff received a letter, dated December 15, 1956, from defendant's attorney (Mr. Morley) requesting clarification of certain provisions contained in the November memorandum. The plaintiff replied to this letter on December 27, 1956, addressing his communication to Firchau, and sending therewith two copies of the letter and the proposed agreement of December 12th. Copies were also sent to Attorney Morley. It should be noted that no description of the property was included with this draft.

The real dispute, however, centers around the events following defendant's receipt of the December 12th agreement. The plaintiff maintains that he never received said agreement back from defendant but that he next heard from him by telephone about March 20, 1957, at which time President Barringer was advised defendant didn't entirely approve of all of

the clauses in the agreement and, therefore, he had not signed it. Plaintiff told defendant to redraft them and submit them as an alternative offer. This was done. Later, according to plaintiff's testimony, other letters were exchanged and telephone calls made in an effort to reach an agreement that would be satisfactory to both parties. Negotiations were finally broken off by plaintiff sending defendant a letter, by registered mail, dated September 12, 1957, cancelling all further negotiations.

Possibly the most significant bit of evidence tending to show that no agreement had been arrived at is that it was not until September 20, 1957, that Firchau acknowledged before a notary public his copy of the December 12th agreement. He then—without any authorization from plaintiff—appended a description of the property thereto and had it recorded in the office of the county recorder of Coconino county.

The question of whether there had been a meeting of the minds on the December 12, 1956, proposed agreement, and whether it had been signed by defendant in January, 1957, and mailed to plaintiff, were questions of fact for the determination of the trial court on all of the evidence submitted:

> "* * * where the existence and not the validity or construction of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist, * * *."

> * * * * * *

> "Where the evidence is conflicting or doubtful, questions as to the execution and delivery of a contract are for the jury."

17 C.J.S. Contracts § 611, pages 1271 and 1274 respectively.

Judgment affirmed.

PHELPS, C. J., and STRUCKMEYER, JOHNSON and BERNSTEIN, JJ., concur.