477 P.2d 557

**PRE-FIT DOOR, INC., an Arizona corporation, Appellant,**

v.

**DOR-WAYS, INC., an Arizona corporation, and R. D. Allen, Appellees.**

**No. 2 CA-CIV 860.**

Court of Appeals of Arizona, Division 2.

Dec. 7, 1970.

D'Antonio & Videen by Lawrence P. D'Antonio, Tucson, for appellant.

Miller, Pitt & Feldman by James C. Carruth, Tucson, for appellees.

HOWARD, Chief Judge.

The action below was based upon an alleged wrongful interference with contractual relations and conversion. Appellant was the plaintiff below and appellees were the defendants. We will refer to the parties as they appeared below. Plaintiff, at times, will also be referred to as "Pre-Fit."

On September 1, 1967, an agreement was entered into between Sunset Industries, Inc., a California corporation, and Ben H. Schermerhorn which resulted in the acquisition of three Arizona corporations by Sunset Industries, Inc. As part of the acquisition agreement, Sunset Industries acquired an option to purchase the plaintiff corporation which was headquartered in Tucson. The option ran for one year and was exercisable on or before September 1, 1968.

The business conducted by plaintiff was the manufacture and sale of pre-hung wooden and metal doors for use in building construction. Plaintiff also sold allied hardware items. The pre-hung wooden door production consisted of 90% of the plaintiff's business.

During the spring and early summer of 1968, certain of the officers and employees of the plaintiff determined to form an independent door plant in the event that Sunset Industries, Inc. did exercise its option to acquire Pre-Fit. The men involved in this decision were Mr. Schermerhorn, the defendant R. D. Allen, Ralph Younker and his son Bruce Younker, and Michael Fisher. Mr. Schermerhorn and defendant Allen sought legal advice concerning their right to do this should the option be exercised and were informed that they could do so.

In order to be ready to open the new and independent door plant, should the option of Sunset Industries to acquire the plaintiff be exercised, defendant placed an order with Ruvo Automation, Inc. for the purchase of the door machinery necessary to produce pre-hung door units. Ruvo Automation, Inc. was a manufacturer of auto-

matic woodwork machinery but had not manufactured the machinery that was then being used by plaintiff and with which the defendants were familiar. The order was placed on or about April 12, 1968 by defendant Allen on a Pre-Fit, Inc. purchase order form.

On August 1, 1968, without prior notice or warning, personnel of Sunset Industries, Inc. presented themselves on the plaintiff's premises and announced to Mr. Schermerhorn and Mr. Allen that Sunset Industries was then exercising its option to acquire the plaintiff corporation and demanded immediate possession of the premises and business. However, settlement of the terms of the acquisition and possession of the premises and business was not accomplished until September 5, 1968, during which time the operation of Pre-Fit continued under an accommodation to both the new and the old management.

Subsequent to August 1, 1968, defendant Allen requested Ruvo Automation to destroy the purchase order form which had previously been sent to them and which bore a Pre-Fit letterhead and then replaced the order with a new one which bore the name of defendant Dor-Ways, Inc.

After plaintiff began operating under Sunset Industries, it apparently experienced some problems with the same type of machinery that had been ordered by the defendant. Because of this difficulty, plaintiff contends it lost a certain amount of sales which, it is claimed, it would not have experienced had not the defendants wrongfully diverted the purchase order for the machinery to the defendant Dor-Ways, Inc. It is this diversion of machinery upon which plaintiff bases its contention of wrongful interference with contractual relationships.

That portion of the complaint which alleged the conversion of property was settled prior to trial of the action and the issue of wrongful interference with contractual relationship went to the jury which unanimously decided against the plaintiff.

Plaintiff claims that the trial court erred by allowing the jury to decide whether or not the purchase order in question constituted a binding contract between Pre-Fit and Ruvo. Intertwined with his claim of of error is also the allegation that the court erred in allowing Schermerhorn, who was president of the plaintiff at the time in question, to give certain testimony which the plaintiff characterizes as "conclusions" and "opinions."

Defendants' main defense in this case was that it never intended that the purchase order be a contract between the plaintiff and Ruvo and that the use of plaintiff's purchase order was only for a convenience. In fact, the uncontradicted testimony of the witnesses at the trial was to that effect. The only contrary evidence was the purchase order itself. Even the witnesses from Ruvo testified that from the very beginning they knew the purchase was not on behalf of the plaintiff. On the other hand, plaintiff argues that the purchase order in the name of Pre-Fit Door, Inc. shows conclusively that there existed a contract between Pre-Fit Door and Ruvo. Plaintiff has cited no cases to uphold this position nor have we been able to discover any in our research and therefore assume there are none.

■ The intentional and unjustified third-party interference with valid contractual relations or business expectancies constitutes an actionable tort recognized in this state. McNutt Oil & Refining Co. v. D'Ascoli, 79 Ariz. 28, 281 P.2d 966 (1955); Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098 (1951); Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224 (1940); Equitable Life & Casualty Ins. Co. v. Rutledge, 9 Ariz.App. 551, 454 P.2d 869 (1969).

The tort has been crystallized and defined in Restatement of Torts § 766 as follows:

"Except as stated in Section 698, [betrothal promises] one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

■ In order for the plaintiff to prove a prima facie case it is fundamental that it must establish the existence of a valid contractual relationship or business expectancy.

■ Contrary to plaintiff's contention, it is the rule that where the existence of a contract is the point in issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist. Firchau v. Barringer Crater Co., 86 Ariz. 215, 344 P.2d 486 (1969).

■ The court did not err in permitting the jury to determine the existence or non-existence of a contract between Ruvo and plaintiff.

■ Mr. Schermerhorn testified, over plaintiff's objections, that he gave defendant Allen permission to use the Pre-Fit purchase order; that when he did, he knew the machinery was not for Pre-Fit; that it was not his intention to bind the plaintiff in any way to purchase the equipment; that Pre-Fit did not need any machinery. When the existence of an alleged oral contract is in issue, all the acts and declarations of the parties tending to refute or establish it are admissible together with all the facts connected with the surrounding circumstances. Cf. Holly Sugar Corporation v. Drain, 73 Colo. 48, 213 P. 119 (1923); 17A C.J.S. Contracts § 593, p. 1156.

■ Over plaintiff's objections, Mr. Schermerhorn was permitted to testify that in his opinion Pre-Fit was not bound by the purchase order and that he and the defendant Allen had sought legal advice and had been told that they were within their legal rights in forming a new corporation to compete with plaintiff. We note that the plaintiff also sued for punitive damages. Punitive damages are not recoverable against a defendant who acts in good faith and under the advice of counsel. Fox v. Aced, 49 Cal.2d 381, 317 P.2d 608 (1957). The above testimony of Schermerhorn was admissible on the issue of punitive damages.

■ Plaintiff further claims that the court erred in failing to give certain of its instructions. Although the complaint alleged two counts, one for wrongful interference with contractual relations and the other with conversion, the pretrial order, without amending any of the pleadings, had as an issue whether or not defendant Allen breached a fiduciary relationship to the plaintiff. There was no evidence whatsoever of any alleged breach of fiduciary relationship other than what would have arisen out of the wrongful interference with the contractual relationship. The court did instruct the jury that if they found the defendant Allen made a contract for Pre-Fit and then diverted that contract to his own use or to the use of Dor-Ways then they might find that it violated his fiduciary relationship and he would be liable for resulting damages. This instruction adequately covered any of plaintiff's theories presented by the evidence.

Plaintiff makes other allegations in regards to the refusal to give instructions. We find these allegations without merit.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.