564 P.2d 1246

The STATE of Arizona, Appellee,

v.

Rick MILLER, Appellant.

No. 2 CA–CR 880.

Court of Appeals of Arizona,
Division 2.

Feb. 9, 1977.

Rehearing Denied April 6, 1977.

Review Denied May 10, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Thomas G. Baker and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Charles L. Weninger, Asst. Public Defender, Tucson, for appellant.

HOWARD, Chief Judge.

Appellant was found guilty by a jury of first degree burglary and child molestation. He was sentenced to concurrent terms in the Arizona State Prison for not less than four nor more than five years on the burglary conviction and not less than twenty years nor more than life on the conviction of child molestation. He contends the trial court erred by (1) admitting testimony of prior bad conduct, (2) denying his motion to suppress, (3) allowing the same jury that determined quilt to determine the truth of the allegation of a prior offense, (4) refusing his instruction on expert testimony and (5) proceeding with his trial in the face of a stay order issued by this court. He also claims that the prosecutor violated his constitutional rights by commenting on his failure to testify. The facts will be set forth as they apply to each issue.

## ADMISSIBILITY OF PRIOR BAD ACTS

Appellant was indicted on a six-count indictment. In Count One it was charged

that he committed burglary in the first degree on August 31, 1975 and in connection with that charge in Count Two, he was charged with the molestation of a child (for the sake of anonymity we will refer to her as "Jane Doe"). In Count Three he was charged with first degree burglary committed on August 17, 1975, and in connection with that charge, in Count Four, he was charged with molestation of a child (we shall refer to this child as "Mary Roe"). In Count Five he was charged with first degree burglary and in Count Six he was charged with obstructing justice.

Upon appellant's motion Counts One and Two were separated from Counts Three and Four and tried separately. Counts Five and Six were also separated, each to be tried in a separate trial. Counts One and Two came on for trial first. The court allowed testimony as to Counts Three and Four to be admitted into evidence at the trial of Counts One and Two. Appellant claims the introduction of the testimony as to Counts Three and Four was prejudicially erroneous since "Mary Roe" was unable to positively identify the appellant as her assailant.

The general rule is that in the prosecution of a particular offense, evidence of another crime entirely distinct and independent of that for which the defendant is being tried is neither relevant nor admissible. *State v. Hughes*, 102 Ariz. 118, 426 P.2d 386 (1967). An exception to this rule is recognized where the offense charged involves an element of abnormal sex acts such as child molestation. *State v. McFarlin*, 110 Ariz. 225, 228, 517 P.2d 87 (1973). In such instances it is admissible to show the accused's propensity to commit such perverted acts.

"Jane Doe", age 11, testified that in the early morning hours of August 31, 1975, she awoke and found a strange man in her bedroom. She described the act of molestation which occurred and described the man as "pot bellied" and over fifty. She could not identify him because she could not see his face. Appellant's fingerprints were found inside the yard gate and on the window and window screen through which he gained entry.

The state then presented the testimony of "Mary Roe" concerning an incident in the same neighborhood which occurred on August 17, 1975. She had been shown ten photographs by a police detective in a photo lineup and eliminated all except that of appellant. She identified the photograph as resembling appellant. At trial, she testified:

"Q. Okay, did a man come to your house with some photographs for you to look at?

A. Yes.

Q. Did he ask you to look at those photographs?

A. Yes.

Q. Did you go through them all?

A. Yes.

Q. Did you see one that you recognized or you thought you recognized?

A. Yes, I saw one.

Q. You saw one person you thought you recognized?

A. Yes.

Q. Did you recognize him as being the person that had come into your house, into your bedroom, that evening?

A. Yes.

Q. Did you tell the officer that you recognized him?

A. Yes.

Q. [MARY], I'm going to ask you to take a look around the courtroom, and I would ask you if you see anyone in the courtroom that ressembles (sic) the man who reached into your room in the early morning hours of August 17th?

A. Yes.

Q. Where is that man seated?

A. Sitting next to the defender."

Although "Mary Roe" identified appellant as resembling the man who molested

her, she could not testify for certain that appellant was that man.

After appellant's conviction on Counts One and Two, Counts Three and Four were tried before a jury. Evidence as to the incidents in Counts One and Two were not introduced in the trial of Counts Three and Four. Appellant was found not guilty of Counts Three and Four. He now claims that the not guilty verdicts should void the guilty verdicts in the instant case.

■ He also claims that the state failed to lay a sufficient foundation for the admission of testimony relating to Counts Three and Four into evidence. Before evidence of other bad acts may be used against a defendant under any exception, the state must prove by substantial evidence, sufficient to take the case to the jury, that the defendant committed the acts. "Mary Roe" described her molestor as 58 years of age, medium complexion, tattooed and balding. Appellant is 50 years of age, of fair complexion and has tattoos on his right and left forearms. She lived in the same neighborhood as "Jane Doe" and the same modus operandi was used as was used in the "Jane Doe" case. We believe that the state made a proper foundation which merited the introduction of the testimony.

■ Analogizing to the case of *State v. Kiser*, 111 Ariz. 316, 529 P.2d 215 (1974) appellant claims that his conviction on Counts One and Two should be reversed since he was subsequently found not guilty on Counts Three and Four. We do not agree. *State v. Kiser, supra,* did not concern itself with the admissibility of prior bad acts but rather the use of a prior felony conviction to impeach. The rule in *Kiser* is that while a prosecutor may use a prior felony conviction which is on appeal to impeach a defendant who takes the witness stand he does so at his own risk since if the prior felony conviction should be reversed on appeal and no new trial held, then the trial court has no other alternative but to grant a new trial. A more apt analogy would be the case of *State v. Little*, 87 Ariz.

295, 370 P.2d 756 (1960) where the state sought to introduce substantively a prior criminal act of which the defendant had been found not guilty. Contrary to the rule which is generally prevalent in the United States, our Supreme Court held in *Little* that the state cannot introduce into evidence prior bad acts of which the defendant had been acquitted for the purpose of showing motive, intent, scheme, identity, modus operandi, etc. The primary rationale for the rule in *State v. Little, supra,* is that to the extent that evidence of the prior offense tends to prove the instant offense, the defendant is required, in order to avoid conviction and punishment for the instant offense, to refute for the second time his commission of the prior offense. A verdict of acquittal should relieve the defendant from having to answer again, at the price of conviction for that crime or another, evidence which amounts to a charge of a crime of which he has been acquitted.

■ The same considerations do not apply when the defendant has not yet been acquitted of the prior bad acts but is subsequently acquitted. The subsequent acquittal on Counts Three and Four does not mean that there was not sufficient evidence to take the case to the jury. It simply means that the particular jury did not find that the state proved the guilt of appellant on Counts Three and Four beyond a reasonable doubt. One can only speculate as to the reasons the jury found appellant not guilty of those counts. The record does show, however, that testimony concerning the crimes covered by Counts One and Two was not offered in the trial on Counts Three and Four. We therefore conclude that this case need not be reversed because of appellant's subsequent acquittal on Counts Three and Four.

## ILLEGAL SEARCH AND SEIZURE

Prior to being charged with the instant offenses, appellant was arrested by Tucson

Police officers for loitering around a school in violation of Tucson Code § 11–33 which provides:

"A person is guilty of loitering when he:

\*   \*   \*   \*   \*   \*

(4) Loiters or remains in or about a school, not having any reason or relationship involving custody of or responsibility for a pupil or student, or any other specific, legitimate reason for being there, and not having written permission from anyone authorized to grant the same."

The state had made a comparison of appellant's fingerprints secured as a result of the above arrest with fingerprints found at the scene of the crime. Appellant moved to suppress this fingerprint evidence on the ground that the City of Tucson Ordinance was unconstitutional. This motion to suppress was denied. Citing the case of *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), it is appellant's contention that since the ordinance is unconstitutional the evidence obtained as a result of the arrest must be suppressed.

■ Appellant has set forth a lengthy argument concerning the constitutionality of the ordinance. Appellee contends that we need not decide whether the ordinance is constitutional because the exclusionary rule is not applicable since its purpose is to deter unlawful police conduct and not the conduct of the legislature. We find it unnecessary to discuss the contentions of either party in order to resolve the issue. There is a recognized exception as to evidence derived from an unlawful search or other illegal police conduct where the normal course of police investigation would, even absent the illicit conduct, have inevitably led to such evidence. *State v. Michelena*, 115 Ariz. 109, 563 P.2d 908 (filed January 28, 1977); *People v. Fitzpatrick*, 32 N.Y.2d 499, 346 N.Y.S.2d 793, 300 N.E.2d 139 (1973) and authorities cited therein. Appellant had already been identified as the perpetrator of the crimes alleged in Counts Three and Four, was suspected of having committed the offenses alleged in

Counts One and Two, and probable cause existed either to arrest him on Counts Three and Four, at which time he would have been fingerprinted, or, his fingerprints secured under A.R.S. § 13–1424. It was therefore, inevitable that his fingerprints would have been secured for the purpose of comparison and the trial court did not err in denying the motion to suppress.

## DETERMINATION OF THE TRUTH OF A PRIOR CONVICTION

■ The state finally was allowed to add two allegations of prior convictions for child molesting to the indictment. After the jury returned its verdict of guilty on Counts One and Two the state proceeded on the allegations of the prior convictions. Appellant objected to having the same jury decide the truth of these allegations on the grounds that it would be prejudiced against him. The trial court overruled the objection, the jury heard evidence on the matter and found that the allegations of prior convictions were true. Appellant claims this was error. We do not agree. Rule 19.1(b), Rules of Criminal Procedure, sets forth the procedure for the trial of a prior conviction. It specifically requires that the same jury which determines the guilt of the defendant also determine whether he is guilty of a prior conviction. Since appellant did not present any evidence whatsoever to contradict the state's evidence as to the prior offenses, his claim of prejudice is hollow.

## INSTRUCTION ON NON–EXPERT WITNESSES

Appellant offered an instruction on how the jury should consider testimony given by non-expert witnesses on the issue of sanity or insanity. The court refused to give this instruction, stating that it did not give instructions on expert witnesses. Instead, the court instructed the jury on the credibility of witnesses pursuant to instruction

No. 5, Recommended Arizona Jury Instructions.

Appellant claims that since there was expert testimony on fingerprints he was entitled to an instruction concerning the jury's consideration of expert testimony. First of all, we observe that the instruction appellant tendered was properly rejected since there was neither testimony nor any issue of sanity or insanity. Appellant had the obligation to offer a proper instruction and cannot complain that the court erred when he failed to do so. It was clear here, however, that even if he had offered a proper instruction on expert testimony the court would not have given it. We do not believe that appellant was prejudiced by the court's failure to do so since the court allowed defense counsel to argue to the jury that it was not bound by the testimony of any expert witnesses but could give it such weight as it deemed the testimony to be entitled. Under such circumstances there is no error.

## PROSECUTOR'S COMMENT ON APPELLANT'S FAILURE TO TESTIFY

In closing argument the prosecutor commented to the jury on defense counsel's attack on the fingerprint testimony, pointing out that if the defendant disputes the fingerprint comparison he is free to hire his own expert witnesses to testify on the matter. Appellant claims that this constituted prohibited comment on his failure to testify in violation of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

We do not agree. The prosecutor can argue to the jury that the state's case has not been contradicted. The comments of the prosecutor were not calculated to point out to the jury that appellant had not taken the stand and testified.

## THE EFFECT OF THE TEMPORARY STAY ORDER

After appellant's motion to sever the different counts of the indictment had been granted by the trial court, the state filed a petition for special action in this court. On January 21, 1976, we issued a temporary stay order in the case staying, inter alia, the trial on Counts One and Two. On February 3, 1976, the petition for special action was denied. On March 23, 1976, appellant's first trial commenced without objection by appellant. On April 5, 1976, we entered an order vacating and setting aside the temporary stay order.

Appellant submits that since his trial on March 23rd was held in violation of the temporary stay order the trial court was without jurisdiction to proceed in the matter. We do not agree. In *Firchau v. Barringer Crater Co.*, 86 Ariz. 215, 344 P.2d 486 (1959) the court discussed the legal effect of a temporary restraining order. The court, quoting from 28 Am.Jur., Injunctions, § 11, characterized the temporary restraining order as:

" ' . . . [A]n interlocutory order . . . going no further in its operation than to preserve the status quo until [a further] determination. When that determination is made, the *whole force* of the temporary restraining order ceases *by its own limitations.* . . . Although a temporary restraining order has the force and effect of an injunction until superseded, it *becomes functus officio when the temporary injunction is granted, having then served its purpose.*' " (Emphasis in original) 86 Ariz. at 219, 344 P.2d at 488–489.

When we failed to grant relief and the time for the state to petition for rehearing had elapsed, the purpose for the issuance of the stay order had been accomplished and was of no further effect. Our order of April 5th, 1976 was merely for the purpose of "housekeeping". As far as the parties were concerned, no stay order was in effect when the trial commenced in March.

Affirmed.

HATHAWAY and RICHMOND, JJ., concurring.