632 P.2d 552

**STATE of Arizona, Appellee,**

v.

**Rick MILLER, Appellant.**

No. 5000.

Supreme Court of Arizona,
In Banc.

July 17, 1981.

**466**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Division, Diane M. Ramsey, Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Richard S. Oseran, Pima County Public Defender, Allen G. Minker, Asst. Public Defender, Tucson, for appellant.

GORDON, Justice:

Appellant Miller was indicted on September 10, 1975, on six counts of burglary, child molestation, and obstructing justice. He was tried and convicted on Counts I and II, after those charges were severed from the remaining counts, and sentenced to the Arizona State Prison for not less than four nor more than five years on Count I and for not less than twenty years nor more than life on Count II. He filed a timely notice of appeal to the Court of Appeals, which affirmed the trial court. *State v. Miller*, 115 Ariz. 279, 564 P.2d 1246 (App. 1977). Petition for review by the Arizona Supreme Court was denied May 10, 1977.

On March 26, 1980, appellant filed a petition for postconviction relief relying on *State v. Canedo*, 125 Ariz. 197, 608 P.2d 774 (1980), requesting the right to file a delayed appeal on the ground that the Court of Appeals' decision affirming the trial court conviction was void due to lack of jurisdiction. The Pima County Superior Court treated the petition as a motion to permit delayed appeal and granted the motion on May 8, 1980, allowing appellant to file a notice of appeal to the Arizona Supreme Court.

■ Initially, we hold that the Pima County Superior Court correctly granted appellant's motion for delayed appeal pursuant to *Canedo, supra*. Accordingly, the opinion of the Court of Appeals, 115 Ariz. 279, 564 P.2d 1246 (App. 1977), is vacated as void for lack of jurisdiction. Taking jurisdiction of Miller's appeal pursuant to A.R.S. Const. Art. 6, § 5(3), and A.R.S. § 13–4031, we affirm the judgment of guilt and sentence of the trial court.

Appellant raises two issues for our consideration. The first is whether the trial court erred in admitting evidence of a prior similar incident or, in the alternative, whether the trial court erred in denying appellant's motion for a new trial after he was subsequently acquitted following a trial for that prior incident.

Counts I and II of appellant's six count indictment charged him with the commission of burglary and child molestation on August 31, 1975. Counts III and IV charged him with the commission of a separate but similar incident of burglary and child molestation on August 17, 1975. Appellant filed a pre-trial motion to exclude evidence of the prior incident of August 17, 1975, at his trial for the incident of August 31, 1975. This motion was denied and evidence of the prior incident was admitted.

Evidence of prior bad acts is usually inadmissible, *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978). It may, however, be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, Rule 404(b),

17A A.R.S. Rules of Evidence, if the prior bad acts are not too misleading or prejudicial, *Rose, supra.*

██ We held in *Rose* that "the trial judge * * * has wide discretion as to the admissibility of prior acts." 121 Ariz. at 136, 589 P.2d at 10. The trial judge in the case at bar ruled that evidence of the events of August 17, 1975, were admissible "either or both on the issues of identity, and of propensity." We need not reach the question whether the disputed evidence was admissible to prove "emotional propensity for sexual aberration," *see State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973), because we find it was properly admitted to prove identity. See Rule 404(b), *supra.*

The victim of the child molestation for which appellant was on trial was unable to positively identify the man who had molested her, either from photographs shown her by the police or in person at trial. Substantial fingerprint evidence was introduced at trial to establish appellant's presence in and around the victim's home, including evidence of appellant's fingerprints on the open window through which the intruder had entered. The state, however, might have felt the need to introduce stronger proof of appellant's identity as the perpetrator of the crime.

The victim of the earlier incident had been able to pick out appellant's photograph from a group shown her by police and identified appellant at trial as "resembling" the man who had leaned through her window and molested her. The state may have believed that her testimony would tend to compensate for the later victim's inability to identify appellant as her offender and thus would be relevant to show appellant's identity as the perpetrator of the crime for which he was being tried.

██ *State v. Jackson,* 124 Ariz. 202, 603 P.2d 94 (1979), set out the test for admitting evidence of prior bad acts to prove identity: there must be similarities between the offenses in those important aspects where normally differences would be expected to be found. Both the similarities and the differences between the acts should be considered in determining admissibility. *Jackson, supra.*

The two incidents under consideration here are similar in that they occurred at about the same time of day, between 2:00 a.m. and 4:00 a.m., to children of the same sex, female, who were about the same age. At the time of trial, one girl was nine and the other was eleven. In both occurrences, a man described by each girl as being around 50 years old and slightly overweight, having short hair and wearing gray clothes, broke into a residence through a window through which he would have been able to see the victim sleeping near the window with another female child of about the same age. In each case there was some illumination in the room in which the children were sleeping from a light in an adjacent room. In each case the child victim was awakened by the male intruder and told to be quiet. The man then put his hand on the lower part of the child's body and fondled her. Both incidents occurred within the same neighborhood in Tucson and close in time, one happening on August 17, 1975, and the other on August 31, 1975.

In comparison to the similarities, the differences seem relatively insignificant. In the August 31st incident for which appellant was being tried, the intruder was lying next to the victim when she woke up. The child described the event at trial in the following words:

"Well, I tried to get up to go get my mom. And he showed me a fist and told me just to be quiet and lie down again. And then he pulled down the bottoms of my underwear and he rubbed his tongue about my uretha. So I hit Sara [the child sleeping next to her] real hard in the stomach and then he got up and left."

In the August 17th incident, the intruder leaned through a window which he had opened and awakened the victim by poking her in the back. The child described the event at trial in these words:

"Q. Now, when the man leaned in and poked you, you woke up at that time?

"A. Yes.

"Q. Did the man say anything to you at the time?

"A. Yes, he said, shush, don't make a move, don't say anything.

"Q. And then what happened?

"A. Well, then he reached up my nightie and he started feeling around my bottom.

"Q. All right. Did he touch you around the bottom?

"A. Yes.

"Q. Tell us what he did, okay?

"A. Well, he touched around it, and I sat up and I said, 'Please, mister, don't.' And he said, shush, don't make a move, don't say anything. Then—then he licked his fingers.

"Q. After he touched your bottom?

"A. Yes.

"Q. And then what happened * * *?

"A Then he—then he leaned up against our bushes and then he said, 'Do you see this?' and his fly was open.

"Q. Did you say anything at that time?

"A. Yes, I said no, I don't want to, and I ran for mom and dad."

We feel that the similarities between the important aspects of these two offenses outweigh the differences.

■ Another requirement for the admissibility of evidence of a prior bad act is that the evidence as to its commission and as to its commission by the defendant must be sufficient to take the prior act to the jury. *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). A review of the record persuades us that that requirement was met in this case. We hold, therefore, that the trial judge did not abuse his discretion by admitting evidence of the prior similar bad act on August 17, 1975, at appellant's trial for the incident on August 31, 1975.

Following appellant's conviction on Counts I and II, he was acquitted in a separate trial on Counts III and IV. In a motion for new trial on Counts I and II, he argued that his subsequent acquittal on Counts III and IV should make the evidence regarding the latter counts retroactively inadmissible at his earlier trial. Appellant based his argument on *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960), which held that evidence of prior offenses of which defendant had been acquitted was inadmissible.

The *Little* Court concluded that the fact of an acquittal, "when added to the tendency of such evidence to prove defendant's bad character and criminal propensities, lower[ed] the scale to the side of inadmissibility of such evidence." *Id.* at 307, 350 P.2d at 763. Although the Court found the factors leading to its conclusion not subject to precise articulation, it noted two points. First, the evidence of the former offense would tend to become remote, speculative and confusing because it would have to be interpreted in the context of the record and verdict of the former trial, due to the doctrines of res judicata or collateral estoppel. Second, allowing evidence of the prior offense to prove the defendant's guilt would require a defendant to refute his commission of that prior offense for a second time, a requirement which should be prevented by a verdict of acquittal.

In *Little*, the acquittal on charges of the prior bad act came *before* the trial at which evidence of that act was used. The above factors are not present in the case before us, where the acquittal occurred *after* the trial at which evidence of the prior acts was introduced. The evidence did not have to be interpreted in light of a prior determination, nor was the defendant required to answer a second time for charges on which he had been acquitted.

■ As a general rule, in furtherance of final judgments, the admissibility of evidence must be determined at the time of trial, not at some indefinite time afterwards. Appellant relies on *State v. Kiser*, 111 Ariz. 316, 529 P.2d 215 (1974), to argue that because the state introduced evidence of another offense at his trial, later vindication of defendant on that charge renders his conviction void. *Kiser* addressed the narrow issue of the effect of using a prior felony conviction, on appeal at the time of trial, to impeach a defendant who had taken the stand to testify. This Supreme

Court held that a prosecutor who uses such a prior felony conviction does so at his own risk, because if the conviction is later reversed by an appellate court and no new trial is held, the trial court would be required to grant a new trial. The Court based its holding on its view that "[i]t is as if the prior felony conviction had never occurred" once it is reversed, 111 Ariz. at 317, 529 P.2d at 216.

■ *Kiser's* holding regarding use of a prior felony conviction to impeach is inapposite to use of prior bad acts to show identity. Admissibility of a prior bad act does not depend on a defendant's conviction for that act. There simply must be sufficient evidence of the commission of the act by the defendant to go to the jury. An acquittal on charges of prior bad acts does not necessarily mean there was insufficient evidence of those acts to go to the jury. We have stated above that the sufficiency of evidence standard was satisfied at defendant's trial. Appellant's subsequent acquittal on Counts III and IV did not, therefore, require a new trial to be granted him on Counts I and II.

The second issue which appellant raises is that the trial court erred in denying his motion to suppress photograph and fingerprint evidence resulting from his arrest under the following city ordinance:

> "A person is guilty of loitering when he:
>
> * * *
>
> "(4) Loiters or remains in or about a school, not having any reason or relationship involving custody of or responsibility for a pupil or student, or any other specific, legitimate reason for being there, and not having written permission from anyone authorized to grant the same."

Tuscon, Ariz., Code § 11–33 (1953).

■ Appellant first argues he should have been "field released" under A.R.S. § 13–1422 because the authorization for his arrest came from A.R.S. § 13–1403(4),

which he claims requires such a release.[1] A.R.S. § 13–1403 provides: "A peace officer may, without a warrant, arrest a person: * * * (4) [w]hen he has probable cause to believe a misdemeanor has been committed and probable cause to believe the person to be arrested has committed the offense. The person so arrested shall be released in conformity with the provisions of § 13–1422." A.R.S. § 13–1422 allows a person arrested for a misdemeanor to be released from custody without being taken to the police station.

We believe that appellant's arrest was also authorized under A.R.S. § 13–1403(2) which contains no reference to the "field release" provisions of A.R.S. § 13–1422. A.R.S. § 13–1403(2) empowers a peace officer to arrest a person without a warrant "[w]hen he has probable cause to believe a misdemeanor has been committed in his presence and probable cause to believe the person to be arrested has committed the offense." As shown below, the record contains sufficient evidence to support a finding that the arresting officer had probable cause to believe appellant had committed, in the officer's presence, the misdemeanor of "loiter[ing] or remain[ing] in or about a school." Accordingly, we find that the photograph and fingerprint evidence was not obtained in violation of a right on defendant's part to "field release."

■ Appellant's second argument, that there was no probable cause to support his arrest for "loiter[ing] in or about a school," is based on the trial judge's finding that "there is no evidence to indicate that the Defendant was anywhere other than on a city street prior to and at the time of his arrest." Because loitering either in *or about* a school is prohibited by Tucson, Ariz., Code § 11–33(4), we feel the ordinance is broad enough to proscribe loitering on a city street adjacent to the school.

The officer who arrested appellant had received information that a yellow vehicle with a certain license plate was following

---

1. The criminal code sections referred to in this paragraph and the following one are from former Title 13, repealed effective October 1, 1978.

children to school. Upon arriving at a street adjacent to the school, the officer observed a yellow car with appellant sitting behind the wheel leaning out toward two females around ten to twelve years of age standing next to the car. As the officer approached the car, it "took off." The officer turned on his lights and siren and pursued the car. After some distance, appellant pulled over. He first denied being in the area and talking to the young females. He later, changed his story but "couldn't give [the officer] any explanation at all why he was even around the school or talking with the females." Under these circumstances, we feel the officer had probable cause to arrest appellant for violating Tucson, Ariz., Code § 11–33(4).

The opinion of the Court of Appeals, 115 Ariz. 279, 564 P.2d 1246 (App. 1977) is vacated. The judgment and sentence of the trial court are affirmed.

STRUCKMEYER, C.J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.